JOHN FORD

v.

THE ILLINOIS REFRIGERATING CONSTRUCTION COMPANY.

*Contracts—Refrigerator—Warranty—Breach—Evidence.*

1. What is the proximate cause of an injury is ordinarily a question for the jury; it is not a question of science or legal knowledge.

2. It is the duty of one subjected to injury from the breach of a contract to make reasonable exertions to lighten the damage, and if through his negligence it is enhanced, he must bear the burden of the increase.

3. In such case it is for the jury to say whether such person could have lessened the damage, and whether the increased loss or injury was chargeable to his wilfulness or imprudence.

4. In an action brought to recover the contract price for building a refrigerator, this court holds that evidence was admissible upon the part of the defendant, going to show the amount lost by him in meats injured, because of the high temperature therein during the time of its use, and by reason of the leakage of ammonia upon them.

[Opinion filed March 13, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. S. M. MILLARD, for appellant.

Mr. W. W. GURLEY, for appellee.

MORAN, P. J.   Appellee brought its action against appellant to recover the contract price for building for appellant a certain refrigerator.   The work was done under the following proposition, which was accepted by appellant, and which both parties agree constituted the written contract between them.

"CHICAGO, 4–5–1888.

"MR. J. FORD, Adams street.

"*Dear Sir:*  We now beg to submit plans and estimate for your refrigerator, 38½ x 14 x 16 double decker.   We propose to construct same under the most improved method of dead air spaces.   The walls, flooring and ceiling will have four linings of best resin and straw-board paper, all sealed with our patent cement.   The walls to be six inches thick, the exterior to be finished with ash, and interior walls of meat room with white wood; floors and ceilings of pine, all selected and thoroughly dry.   The meat room to have six windows and three doors, as shown in plan, to be nine feet high inside, and fitted with racks as required.

"The poultry room to be six feet clear inside, to have six windows and one door, with steps and platform, and whatever fittings and partitions required; the windows to have three linings of D. T. Am. glass, and both rooms fitted with piping and connections suitable to run the rooms at any temperature desired down to 25 degrees under our Anhydrous Am. system.   The entire work to be finished in first class workmanlike manner for the sum of $1,290.

"In addition to the piping, we furnish electric batteries, regulators, valves, fountains and absorbers, but it is hereby understood and agreed that those appliances shall always remain the property of the company.   A deposit of $25 is required for the use of same, and should you at any time

determine to change the system or cease using these appliances, this deposit will be rebated upon return of said property.

"We further undertake to furnish and deliver all the Anhydrous Ammonia which may be required for running these refrigerators at the rate of three cents per pound for one year from date of agreement, or at three and one half cents per pound on a contract for three years.

"We further guarantee that both refrigerators can be run at an average temperature of 35 degrees on an average consumption of 120 pounds ammonia per day, due allowance to be made for first filling, and the refrigerators to be operated with proper watchfulness and care.

"Should our system fail to give satisfactory results within a reasonable time, and should you desire it, we undertake to remove our ammonia appliances and substitute for same, free of any extra cost, the most approved system of ice refrigeration, and will undertake to have your meat room ready for use by the 27th inst, and poultry room as soon afterward as possible.

"Will shellac the interior, and give the exterior a good hard oil finish. We further undertake to keep these refrigerators in good running order and repair, free of expense, for one year from date of contract.

"Awaiting your decision, we are

"Yours truly,

"ILLINOIS REFRIGERATING CONS. CO.,

"per J. McGREGOR, Mgr."

"P. S. Payment, say half in thirty days, balance in sixty days.                                    J. McG."

The appellee built the refrigerator and fitted it up for operation under the Anhydrous Ammonia system and claims that it was completed about the first of May, and about the eighth of May, appellant placed his meats in it, upon the representation by appellee's manager that it was ready for use. Upon putting in the meats appellant found that the temperature of the refrigerator was not low enough to preserve the meats, but appellee's manager promised to get the temperature down

inside of an hour or two. He failed to do so, though he kept on insisting from day to day that he would get the temperature down, and excusing his failure to do so on the ground of lack of ammonia and temporary failure of the apparatus to work until at the end of a trial lasting some six weeks, the manager admitted that the attempt was a failure and the box was changed over to an ice cooler. At no time during the continuance of the experiment or test of the box did the temperature get below forty to forty-two degrees, when the meats and poultry were in it, and appellant was induced to keep the meats in the refrigerator and persevere in the test by the continued assertions of the manager that the temperature would be brought down to the necessary degree. On one or two occasions during the test, appellant had to remove all the meats from the refrigerator on account of the escape from the pipes in the box, of ammonia, which appellant claimed spoiled the meats. On the trial in the court below appellant sought to recoup or set off under a plea of set-off filed, the amount lost by him in meats injured because of the high temperature in the refrigerator during the time he used it, and for meats spoiled by reason of the leakage of ammonia upon them.

The court refused to admit evidence of the loss of or injury to meat from any other cause than the escape of ammonia upon it by reason of defective piping or construction.

Appellant offered to prove the quantities of meat lost during the time the box was running and the dates when lost, but the evidence was excluded. It seems to have been the theory of the trial court, that as appellant was desirous that the system of refrigeration attempted should succeed, and as he continued the trial of it with the knowledge that the temperature was not brought low enough to preserve his meats, he should, as a matter of law, be compelled to bear whatever loss from high temperature the continuance of the trial entailed.

We are of opinion that this view is erroneous. It is of course the well settled rule that the damages which may be recovered for a breach of contract are those " immediately

flowing out of the breach complained of, something imme-
diately connected with the breach of contract and not merely
connected with it through a series of causes intervening be-
tween the immediate consequences of the breach and the
damage or injury complained of;" but injury to the meat
placed in the refrigerator can not be said to be too remote as
a matter of law.

The guaranty of the contract is that the refrigerator could
be run at an average temperature of thirty-five degrees. It
was built, as shown on the face of the contract, for the purpose
of storing meats.

" What is the proximate cause of an injury is ordinarily a
question for the jury. It is not a question of science or legal
knowledge. It is to be determined as fact in view of. the cir-
cumstances or facts attending it. 94 U. S. 475.

The law imposes on one subjected to injury from a breach
of contract, the duty of making reasonable exertions to
lighten the damage, and if through his negligence the dam-
age is enhanced, he must bear the burden of the increase.
But in every case the question of whether by reasonable dili-
gence he could lessen the damage, or whether the increased
amount of it is due to his wilfulness or imprudence, is one for
the jury to determine upon a consideration of all the facts and
circumstances of the particular case.

In Jones v. George, 61 Texas, 345, a planter purchased from
a druggist " paris green " for the known purpose of killing
cotton worms. There was no warranty that the article sold
was paris green, but the facts known to both parties gave rise
to an implied contract that such was the article delivered and
the druggist honestly believed it was, but it turned out to be
some other drug harmless to the worms. The planter used
the drug on his cotton and the worms destroyed his crop, and
he claimed the value thereof as damage for the breach of the
implied contract. It was shown on the defense that he could
have tried it on worms or insects and ascertained that it
was not paris green, and that by care he could have saved his
crop with the genuine drug which could readily be obtained.
Both parties acted in good faith, and the question whether

paris green would kill the worms was not certainly known, both parties understanding that it was an experiment. The planter discovered before his whole crop was destroyed that the article was not paris green and saved 'the portion of the crop last attacked by using the genuine article. It was urged that he should have suspected, when he found that the drug was not effective where first used, that it was not paris green.

The court said, that question, with all others in the case, and all the evidence, should be left to the jury, "and if in reference to such matters it was found that the appellant had not used that ordinary care which a prudent man would have used under the circumstances, that he ought not to recover for such loss of crop as might have been avoided by ordinary care."

In Houser v. Pearce, 13 Kan. 104, where the contract sued on was one to harvest certain oats, and the claim that by reason of the breach the crop was entirely lost and destroyed, the court held that an instruction telling the jury that if the plaintiff, after using all reasonable precaution, lost his crop by reason of the failure of defendants to perform their contract, he was entitled to recover the amount of such loss, was correct.

In Smeed v. Foodd, 102 E. C. L., the action was for damages for breach of contract to deliver plaintiff a threshing machine within three weeks. At the end of three weeks plaintiff's wheat was ready to thresh, and on plaintiff's remonstrating at the delay in the delivery of the machine, defendant several times assured him it should be sent forthwith. By reason of delay the wheat was deteriorated by the rain and sold for less in the market. The question was whether plaintiff could recover this deterioration, and it was argued that he ought to have obtained another machine, but Lord Campbell said : "The defendant led him on from day to day to suppose that the machine which he had ordered would be speedily delivered to him. The plaintiff, therefore, being in no default, I think he is entitled to substantial damages in respect of all those items of loss which resulted from the fall of rain."

Wightman, J., said: "If there had been an actual refusal by the defendant to deliver the machine, he might have had a better case, for then it would have been the plaintiff's own fault if he had not made every effort to procure another; but the defendant, by continually promising the plaintiff that the machine was on the point of arriving, prevented the latter from taking any further steps."

In Haven & White v. Wakefield, 39 Ill. 509, the contract was to erect a building to be used for the purpose of storing broom corn. There was a failure to complete the building in proper time, and the party was compelled to use it for storing the crop in an unfinished condition, and the brush was seriously injured by the weather. The court held this damage to the broom corn was recoverable as the proximate result of the breach of the contract.

The foregoing cases show what would be a fair rule of damages in this case. Here the manager for appellee, by continually promising appellant that he would get the temperature down, induced appellant to continue using the box from day to day. The manager was the expert who was introducing this system of refrigeration, and who presumably understood how it would operate and whether it would be successful. It appears, also, that appellant had no other refrigerator at hand that he could use; that the weather was warm; that he had to have a large stock on hand for his trade; and that he did not move into this store or place his meats in this refrigerator until he was assured by appellee's manager that it was ready for use. The evidence then, as to all the meats lost or injured by being kept in this box, whether from the effects of heat or of escaping ammonia, was admissible, and it was for the jury to say, upon a consideration of all the evidence, whether all or any of such loss or damage was due to lack of ordinary prudence on appellant's part. If the jury should find that in keeping meats in the box, under all the circumstances, appellant was negligent, to the extent that the loss arose from such negligence, appellant should himself stand the damage; otherwise the loss may be charged to the breach of its undertaking by appellee. No other error as-

signed requires discussion. We think, as to other questions, the case was correctly tried.

For the error in excluding the evidence as to the amount of meat lost or injured by reason of high temperature during the time the box was used, the judgment must be reversed and the case remanded.

*Reversed and remanded.*