APPOLLONIA LANDGRAF, Admx.

*v.*

ABRAHAM KUH *et al.*

*Opinion filed December 20, 1900—Rehearing denied February 8, 1901.*

1. APPEALS AND ERRORS—*instruction to find for defendant should be refused if evidence tends to prove plaintiff's case.* An instruction to find for the defendant should be refused if there is evidence tending to show the plaintiff's right to recover.

2. FIRE-ESCAPES—*owner of building not relieved from liability because building is rented.* The owner of a building is not relieved from liability under the act of 1885, relating to fire-escapes, (Laws of 1885, p. 201,) because the building is in the possession of tenants.

3. SAME—*duty regarding fire-escapes has its origin and measure in the statute.* The duty of providing a building with fire-escapes did not exist at common law, but has its origin and measure in the statute.

4. SAME—*what evidence tends to show that the building was used for manufacturing purposes.* Evidence that the floor of the building occupied by the parties for whom plaintiff's intestate was working at the time of the fire was used by them in making garters and hose-supporters, for which purpose at least eighteen machines operated by electric power were used, and that the tenants on other floors were engaged in making children's clothes, vests, elastic and metal goods and dummies, tends to show that the building was used for manufacturing purposes.

5. LAW AND FACT—*whether a building was used for manufacturing is for the jury.* It is for the court to say what significance shall be given to the word "manufacturing," as used in the Fire-escape law of 1885, but after the definition is given by the court it is for the jury to say whether a particular building was used for manufacturing purposes.

6. SAME—*when question of number of persons employed should be left to jury.* If there is testimony that one hundred and fifty persons were employed above the second floor of a building, the determination of the truth of such matter should be left to the jury, notwithstanding the testimony is shaken by cross-examination of witnesses or contradicted.

7. SAME—*whether plaintiff's intestate could have used fire-escape is for the jury.* Whether obstructions alleged to have been put by tenants in front of the window communicating with a fire-escape prevented plaintiff's intestate from using the fire-escape, or whether its use was prevented by the flames and smoke, are questions of fact for the jury.

8. SAME—*whether employee assumes risk of insufficient fire-escapes is for the jury.* Whether plaintiff's intestate assumed the risk incident to there being an insufficient number of fire-escapes on the building where she was employed is a question for the jury under the particular circumstances.

9. SAME—*question of proximate cause is ordinarily for the jury.* The question what is the proximate cause of an injury is ordinarily one of fact, to be determined by the jury under the instructions.

*Landgraf* v. *Kuh,* 90 Ill. App. 134, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is an action of trespass on the case, brought on February 3, 1896, by Appollonia Landgraf, as administratrix of the estate of Kittie Landgraf, deceased, against Abraham Kuh, Adolph Nathan and Siegfried M. Fischer, to recover damages for the death of said Kittie Landgraf, alleged to have resulted from the failure of the appellees, defendants below, to provide a certain building owned by them and situated in the city of Chicago, where the deceased was engaged in work, with sufficient and proper means of egress, ladders and fire-escapes, so as to enable the persons employed therein to leave said building, in case of fire, with reasonable safety. The declaration originally consisted of four counts, and to the declaration appellees filed a general demurrer on February 28, 1896. This demurrer was sustained, and the declaration was amended. On November 19, 1897, a plea of the general issue was filed by the appellees to the declaration. On April 19, 1899, the declaration was amended by changing the word "sixth" to "fourth" in describing the floor of the building demised by appellees to a certain co-partnership, doing business under the name of Stein & Co., who employed appellant's deceased. A jury was then empaneled, and the trial proceeded before the court and a jury. After the introduction of testimony

by the plaintiff, counsel for appellees, the defendants below, moved the court to take the case from the jury, and to instruct the jury to return a verdict of not guilty. This motion was sustained by the court, and the bill of exceptions recites that the court "instructed the jury in writing to return a verdict of not guilty, to which ruling· of the court counsel for appellant excepted." The written instruction, however, to the jury to return a verdict of not guilty is not found in the bill of exceptions. But it would appear from the recital in the record, that the jury returned a verdict of not guilty in accordance with the instruction of the court. A motion for a new trial was made by the appellant, and overruled, and judgment was entered in favor of the defendants, and against the plaintiff for the costs. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance. The Appellate Court granted a certificate of importance.

The facts, substantially, are as follows: On November 22, 1895, appellees owned a brick building, seven stories high, situated at 215 and 217 VanBuren street, in the city of Chicago. The building was erected in the shape of an L, having a frontage of forty-eight feet on VanBuren street, extending north about one hundred feet, and then running east on the west side of Franklin street, where it had a frontage of about fifty-one feet. Its various floors were arranged in lofts and offices, and rented by appellees to various tenants, several of whom were engaged in manufacturing vests, garters, dummies, dyes and other commodities. A. Stein & Co. were among the tenants of appellees, and occupied a part of the fourth floor in the south-west corner of the building, where they conducted the business of manufacturing garters and hose supporters, and employed some thirty-eight people, mostly women, of whom the deceased, Kittie Landgraf, was one. The part of the fourth floor, so occupied by A. Stein & Co., faced on VanBuren street, and ran back

northward a certain distance, upon the alley side of the building, there being an alley along the west side of the building and running northward from VanBuren street. The hallways on the floors of the Franklin street side of the building were connected with the hallways on the VanBuren street side by doorways, which were open in the daytime. A fire-escape was attached to the Franklin street front of the wall looking to the east; and there was another fire-escape upon the west wall of the building, facing upon the alley and some distance back from the VanBuren street front. The fire-escape on the alley side of the building was accessible from the various floors by platforms in communication with a row of windows. Between the fire-escape and the south-west corner of the VanBuren street front wall on the fourth floor was a single window. The window, which communicated with the fire-escape on the fourth floor in A. Stein & Co.'s apartments, was a double window, consisting of two windows close together with a frame or piece of metal between them. The platform of the fire-escape projected from the south half of this double window about two and one-half feet. There were iron shutters on this double window, which opened outwardly. On the VanBuren street side of the building, in the hallway, some distance back from the VanBuren street entrance, was a passenger elevator, capable of holding about twenty-five persons, and back of that a short distance was a stairway going down from the floors. On the morning of November 22, 1895, a fire broke out in this building, and the deceased, Kittie Landgraf, a girl seventeen years old, and then working for A. Stein & Co., while attempting to leave the building by way of the bay window opening upon the VanBuren street front of the building, fell and lost her life. The firemen put up ladders on the VanBuren street front, and, among those, an extension ladder, which was not long enough to reach the sill of the bay window, where the deceased and some of the other working girls were

standing or sitting. The deceased was hanging out over the central portion of the bay window, and a fireman, who came up to the top of the ladder, which extended to only within about four feet of the window ledge, is said by some of the witnesses to have told those of the girls, who were holding deceased, to let her go. As she was about to step on the ladder, some one on the third floor of the building jumped upon it, and, the clutches not having been set, the extension portion of the ladder was driven to the ground, and the deceased fell to the sidewalk, and was killed. Several other of the girls jumped from said bay window, after the deceased fell, but were caught by the firemen. The heat of the fire seems to have been so great, that some of the girls had their hair singed and their clothes burned, while standing at the bay window at the VanBuren street front. There was no fire-escape upon the VanBuren street front of the building. In order to prevent suffocation, as it would appear, several of these girls sat upon the window ledge, hanging out as far as possible, and among them was the deceased.

By an act of the legislature of this State, approved June 29, 1885, in force July 1, 1885, entitled "An act relating to fire escapes for buildings," it is provided, in section 1, "that * * * all buildings in this State which are four or more stories in height, excepting such as are used for private residences exclusively, but including flats and apartment buildings, shall be provided with one or more metallic ladder or stair fire-escapes attached to the outer walls thereof and extending from or suitably near the ground to the uppermost story thereof, and provided with platforms of such form and dimensions and in such proximity to one or more windows of each story above the first, as to render access to such ladder or stairs from each such story, easy and safe; the number, location, material and construction of such escapes to be subject to the approval of the board of supervisors in counties under township organization, and the board of

county commissioners in counties not under township organization, except in villages, towns and cities organized under any general or special law of this State, such approval shall be had by the corporate authorities of such villages, towns and cities: *Provided*, however, that all buildings, more than two stories in height, used for manufacturing purposes or for hotels, dormitories, schools, seminaries, hospitals or asylums, shall have at least one such fire escape for every fifty persons for which working, sleeping or living accommodations are provided above the second stories of said buildings; and that all public halls, which provide seating room above the first or ground story, shall be provided with such numbers of said ladder or stair fire-escapes as the board of supervisors or commissioners or corporate authorities aforesaid may direct."

Section 2 of the act provides, that "all buildings of the numbers of stories and used for the purposes set forth in section 1 of this act, which shall be hereafter erected in this State, shall, upon or before their completion, each be provided with fire-escapes of the kind and number, and in the manner set forth in said section 1 of this act."

Section 3 of the act provides for giving notice by the supervisors, commissioners and authorities above mentioned to "the owner or owners, trustees, lessee, or occupant of any building," etc., not provided with such fire-escapes, commanding "such owners, trustees, lessee or occupant, or either of them, to place or cause to be placed upon such building, such fire-escape or escapes" within a certain time. Said section also provides, that the grand juries may hear testimony for the purpose of ascertaining whether buildings are provided with fire escapes, as directed by the act.

Section 4 provides that "any such owner or owners, trustees, lessee or occupant, or either of them, so served with notice as aforesaid, who shall not within thirty days after the service of such notice upon him or them, place

or cause to be placed such fire-escape or escapes upon such building as required by this act," etc., "shall be subject to a fine of not less than $25.00, or more than $200.00, and to a further fine of $50.00 for each additional week of neglect to comply with such notice."

Section 5 of the act provides, that all the money so collected as fines shall be paid into, or placed to the credit of, the common school fund, etc. (1 Starr & Curt. Ann. Stat.—2d ed.—pp. 1283, 1284).

The second and third counts of the declaration are based upon the statute above quoted. The second count avers that appellees, as owners of a building more than two stories in height, used for manufacturing purposes, and in which a large number, to-wit, two hundred persons, were employed in the manufacturing business, above the second story of said building, by reason of the statute were charged with the duty of providing one metallic ladder or stair fire-escape attached to the outer walls of said building, for every fifty persons employed above the second story of the same, and that, because of the failure and neglect of appellees to provide said building with the number of fire-escapes aforesaid, appellant's deceased was forced to leave said window as aforesaid, and in so doing was killed.

STEDMAN & SOELKE, for appellant:

Buildings more than two stories in height, used for manufacturing purposes, are required by statute to have at least one fire-escape for every fifty persons for whom working accommodations are provided above the second story of said building. Hurd's Stat. chap. 55, sec. 1.

The building owned by appellees, and in which the fire occurred, was used for manufacturing purposes, and ought to have had at least three fire-escapes, since there were one hundred and fifty people employed above the second floor. *Norris Bros.* v. *Commonwealth,* 27 Pa. St. 494; *New Orleans* v. *LeBlanc,* 34 La. Ann. 597; *Schriefer* v. *Wood,*

5 Blatchf. 216; *Murphy* v. *Arnson*, 96 U. S. 134; *Carlin* v. *Assurance Co.* 57 Md. 526; Hurd's Stat. chap 55*a*, sec. 1.

The failure on the part of appellees to provide the number of fire-escapes required by the statute is actionable negligence in favor of appellant. *Schwander* v. *Burge*, 46 Hun, 66.

Where a statute commands or prohibits a thing for the benefit of a person, he should have a remedy upon the same statute for the thing enacted for his advantage or for a wrong done to him contrary to its terms. *Pauley* v. *Steam Gauge Co.* 15 L. R. A. 197; *Rose* v. *King*, 15 id. 160; *Willy* v. *Mulledy*, 78 N. Y. Ct. of App. 310.

Deceased did not assume any of the risks growing out of appellees' neglect to comply with the statute in respect to fire-escapes. *Willy* v. *Mulledy*, 78 N. Y. Ct. of App. 310; 1 Shearman & Redfield on Negligence, 217.

Where the evidence adduced tends to prove a case, the court should not take it from the jury. *Railroad Co.* v. *Baddeley*, 150 Ill. 328; *Pullman Car Co.* v. *Laack*, 143 id. 242.

What is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. *Ford* v. *Refrigerating Co.* 40 Ill. App. 222; *Fent* v. *Railway Co.* 59 Ill. 349.

ISRAEL SHRIMSKI, (SAMUEL S. PAGE, of counsel,) for appellees:

In actions like the present one, where it is sought to recover for alleged negligence, this court will not inquire into any controverted questions of fact. The court is confined to a review of the questions of law. *Bennett* v. *Connelly*, 103 Ill. 50; *Railway Co.* v. *Mills*, 105 id. 63; *McCormick Machine Co.* v. *Burandt*, 136 id. 170; *Bernstein* v. *Roth*, 105 id. 189.

The statute requiring buildings to be provided with fire-escapes imposes a duty unknown to the common law. *Schott* v. *Harvey*, 105 Pa. St. 222; *Keeley* v. *O'Connor*, 106 id. 321; *Lee* v. *Smith*, 42 Ohio St. 458; *Pauley* v. *Steam Gauge*

*Co.* 131 N. Y. 90; *Huda* v. *Glucose Co.* 154 id. 474; *Keither* v. *Granite Mills*, 126 Mass. 90; *Jones* v. *Granite Mills*, id. 84.

The statutes of this State impose no duty upon the owner of a building to provide fire-escapes. Even conceding (which we do not) that the building was a building used for manufacturing purposes, then the statute does not impose a duty upon the owner of the fee but upon the owner of the factory. *Schott* v. *Harvey*, 105 Pa. St. 222; *Keeley* v. *O'Connor*, 106 id. 321; *Lee* v. *Smith*, 42 Ohio St. 458.

The building owned by the defendants was not a building used for manufacturing purposes. The meaning of the phrase, "a building used for manufacturing purposes," is a question of law, and for the court to determine. *Carlin* v. *Assurance Co.* 57 Md. 526; *Schott* v. *Harvey*, 105 Pa. St. 222; *Insurance Co.* v. *Brock*, 57 id. 82; *Liebenstein* v. *Insurance Co.* 45 Ill. 303.

In order that the plaintiff may fasten any liability upon the defendants she must show something beyond the mere omission by them of a duty,—*i. e.,* it is necessary to show that such omission of duty was the direct and proximate cause of the accident complained of. *Railroad Co.* v. *McKean*, 40 Ill. 218; *Railroad Co.* v. *VanPatten*, 64 id. 510; *Railroad Co.* v. *Parker*, 131 id. 537.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the trial of this case, and at the conclusion of the testimony of the plaintiff below, the court instructed the jury to find the defendants not guilty, and a verdict of not guilty was found in obedience to such instruction. It is well settled in this State, that an instruction to the jury to find a verdict for the defendant should be refused, where there is evidence tending to show the plaintiff's right to recover. If there is evidence, tending to show the plaintiff's right to recover, there must be a submission of the case to the jury. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Baddeley*, 150 Ill. 328). "If

there is evidence, which fairly tends to support the plaintiff's case, it must be submitted to the jury." (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242). The question, presented for our consideration, then, is not whether the evidence in this case was sufficient to support a verdict by the jury in favor of the plaintiff, but whether there was evidence tending to establish a cause of action.

*First*—It is claimed by the appellees that, under the statute quoted in the statement preceding this opinion, the owners of the building are not liable but only the tenants or occupants of the premises destroyed by the fire. In the case at bar, the appellees were the owners of the building, but A. Stein & Co. were tenants of a part of the fourth floor of the building under the appellees; and it is said, that, inasmuch as A. Stein & Co. controlled the possession of that part of the fourth floor where the deceased, Kittie Landgraf, was working at the time of the fire, the liability, if any exists, is the liability of A. Stein & Co., and not of the appellees.

Cases may be found, decided in other States, where it has been held that the word, "owner," as used in statutes of this kind, means the person in possession of the premises destroyed by fire with the power of controlling the same. These cases place the responsibility upon the person in possession and occupancy of the property, and treat him as the owner for the time being, on the ground that the nature of his business renders the erection of fire-escapes necessary to protect the lives of his employees. In other words, the word, "owner," is there held to be the owner of the business conducted in the building, and not the owner of the building itself. (*Schott* v. *Harvey*, 105 Pa. St. 222; *Keeley* v. *O'Connor*, 106 id. 321; *Lee* v. *Smith*, 42 Ohio St. 458).

The construction thus contended for may have been proper, as applied to the statutes under consideration where such construction was adopted, but cannot be held to be the proper construction of the Illinois act of 1885.

Section 2 of the latter act provides that "all buildings of the number of stories and used for the purposes set forth in section 1 of this act, which shall be hereafter erected in this State, shall, upon or before their completion, each be provided with fire-escapes of the kind and number, and in the manner set forth in said section 1 of this act." The fact, that the buildings are to be provided with fire-escapes "upon or before their completion," indicates that the duty of providing such fire-escapes devolves upon the owners of the buildings. The fire-escapes are required to be a part of the construction of the building itself. Moreover, the notice, commanding such fire-escapes to be placed upon the building, is required by section 3 to be given to "the owners, trustees, lessee, or occupant, or either of them." The injunction being in the alternative, the notice may be given to the one, as well as to the other, and, therefore, to the owner, as well as to the lessee or occupant. We are, therefore, of the opinion, that the appellees were not relieved from liability in regard to the placing of fire-escapes upon their building, because the fourth floor of the premises, where appellant's intestate was at work at the time of her death, was in the possession and under the control of tenants of appellees, instead of being directly in the possession of appellees themselves.

*Second*—The counts of the declaration, which are based upon the statute above referred to, allege that the building, or the portion thereof in the possession of A. Stein & Co., the tenants of appellees, was "used for manufacturing purposes." It is denied by the appellees, that any of the tenants of the building were engaged in the manufacturing business; and it is urged that, upon this ground, no liability attached to appellees.

We are inclined to agree with appellees, that the duty of providing fire-escapes did not exist at common law, but has its origin and measure in the statute, requiring that such fire-escapes be placed upon buildings. The

statute imposes a duty unknown to the common law. (*Pauley* v. *Steam Gauge and Lantern Co.* 131 N. Y. 90; *Jones* v. *Granite Mills*, 126 Mass. 84; *Schott* v. *Harvey, supra*). But we are not inclined to agree with counsel for appellees, that there was no evidence in the present case, tending to show that the employees of A. Stein & Co. were engaged in the manufacturing business.

The word, "manufacture," has been defined as "the process of making anything by art or of reducing materials into form fit for use by hand or by machinery." (14 Am. & Eng. Ency. of Law,—1st ed.—pp. 257-259). While the original meaning of the word "manufacture" is to make with the hand, the definition of the term is not confined to this original signification. Manufacturing generally "consists in giving new combinations to matter which has already gone through some other artificial process." (*Norris Bros.* v. *Commonwealth*, 27 Pa. St. 494). "When great quantities of salable articles are produced, even by a single operation of a very simple machine, we frequently, if not ordinarily, speak of the operation as a manufacture. * * * And when any article of manufacture, having a distinct name in the trade and commerce of the country, is produced by machinery, * * * from any material or materials having a different commercial name from the article produced, we may generally speak of the operation by which it is produced as a manufacture." (*Schricfer* v. *Wood*, 5 Blatchf. 216). Bouvier in his Law Dictionary, in defining the word "manufacture," says: "It includes any new combination of old materials constituting a new result or production in the form of a vendible article, not being machinery." (*Murphy* v. *Aronson*, 96 U. S. 134; *City of New Orleans* v. *LeBlanc*, 34 La. Ann. 597). "Now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employ-

ment of machinery, * * * are now commonly desig-
nated as 'manufactured.'" (*Carlin* v. *West Assurance Co.*
57 Md. 526).

The evidence in this case tends to show, that the por-
tion of the fourth floor of the building of appellees, which
was occupied by A. Stein & Co., was used by them for
the manufacture of garters and hose-supporters; and
that, in this business they operated at least eighteen ma-
chines, which were driven by electric power; and that
this electric power was furnished by the appellees from
another building across the street from the building in
question, and on the south-west corner of Franklin and
VanBuren streets, which latter building was owned by a
corporation known as the Kuh, Nathan & Fischer Com-
pany, appellees being the stockholders therein. The tes-
timony also shows, that there were several other tenants
in the building, who were engaged in making children's
clothes, vests, and elastic and metal goods, and dummies.
A. Stein & Co. made garters, hose-supporters and belts,
and, in connection with these, made use of certain metal
goods known as garter buckles, cuff-holders and armlets.
In view of this testimony, we are not prepared to say
that there was not evidence, tending to show the carry-
ing on of a manufacturing business in the building. It is
true, as is contended by counsel for appellees, that the
signification of the word "manufacture" was a matter to be
decided by the court, but, after the definition is given by
the court, then the question, whether the present build-
ing was used for manufacturing purposes or not, was a
question for the jury. (*Carlin* v. *West Assurance Co. supra*).

*Third*—It clearly appears from the evidence, that there
were only two fire-escapes attached to this building,
if it was one building, instead of two buildings. One of
these fire-escapes was upon that portion of the building,
which fronted east upon Franklin street; the other fire-
escape was upon the west side of the building, fronting
upon the alley, and being situated upon the west wall of

the building some distance back from the portion of the building, which fronted upon VanBuren street. There was no fire escape upon the VanBuren street front of the building. The statute provides "that all buildings more than two stories in height, used for manufacturing purposes * * * shall have at least one such fire-escape for every fifty persons, for which working * * * ac-- commodations are provided above the second stories of said buildings." Appellant's intestate was at work in the front part of the fourth floor of the building, and in the VanBuren street ell of the building. It is claimed on the part of appellees, that there were not one hundred and fifty persons at work in the building above the second story, and that, therefore, appellees were not required to put more than two fire-escapes upon the building. If there were one hundred and fifty persons at work in the building used for manufacturing purposes above the second story thereof, then, under the statutory requirements, there should have been one fire-escape for each of such fifty persons, or three fire-escapes, whereas it is not claimed that there were more than two. Whether or not there were one hundred and fifty persons in the building above the second story, so occupied as above stated, was a question of fact to be determined by the jury. As we read the evidence, there was testimony tending to show that there were one hundred and fifty persons employed in this building above the second story. At least two witnesses stated, that there were one hundred and fifty persons so employed. Their testimony may have been weakened by cross-examination, or may have been contradicted by other evidence, but the question here is not as to the weight of the evidence, but the question is as to what the evidence tends to prove. As there was evidence tending to prove the employment of one hundred and fifty persons above the second story, we are of the opinion that the court erred in not leaving it to the jury to determine that matter.

188—32

There was some testimony, tending to show that the window, which communicated with the platform of the fire-escape on the west side of the fourth floor of the building, had iron shutters, and that one of these shutters was kept closed during the day by A. Stein & Co. There was also evidence, tending to show that the access to the fire-escape from the room, occupied by A. Stein & Co., was in a certain way obstructed by the presence of some shelves, or a desk, near or against the window. Of course, if access to the fire-escape was prevented by the act of A. Stein & Co., the appellees were not responsible. But it was a question of fact to be determined by the jury, whether such obstructions prevented the use of the fire-escape or not. Whether appellant's intestate could have escaped by way of the fire-escape, which was upon the west side or alley side of the room, was a matter for the determination of the jury. It was for the jury to say, whether, upon the whole case, appellant's intestate could have escaped, or would have escaped, if the number of employees engaged above the second floor was sufficient to require the placing upon the building of another fire-escape, and if such third fire-escape had been placed upon the building. (*Willy* v. *Mulledy*, 78 N. Y. 310). In *Schwandner* v. *Birge*, 46 Hun, 68, it was said by the court: "The question, whether the means of egress were reasonably sufficient, and all that due care required of the defendant to provide for his employees, was for the jury; that was one of the vital questions to be determined by them."

There was also evidence, tending to show that the elevator and stairway in the hall of the VanBuren street portion of the building were, by reason of the fire and smoke, in such a condition, that the employees of A. Stein & Co. could not escape by their use. There was also evidence tending to show that some of these employees, including appellant's deceased, were forced by the fire and smoke forward on the fourth floor to the VanBuren street front, in order to get air through the bay window on that

front, and to prevent suffocation. Some of the witnesses say, that the faces of some of the girls at that window were burned, and that their hair was singed by the fire. Whether or not the obstructions, alleged to have been placed in front of the window communicating with the fire-escape, or the pressure of the flames and the smoke, prevented the use of the fire-escape on the alley side of the building by the employees was exclusively a matter for the jury to decide.

*Fourth*—It is claimed by the appellees that this young girl, who was only a little over seventeen years of age when she lost her life, knew of the existence of the fire-escape, and was herself guilty of negligence in not making use of it. There is some testimony, tending to show that some of these employees had no knowledge of the existence of this fire-escape upon the alley side of the building. Whether or not the deceased knew of it is a matter about which the evidence is silent, but the question whether she had knowledge of it or not was also, like the other questions above mentioned, a matter for the decision of the jury.

Undoubtedly, the general rule is that, if a servant accepts service with knowledge of the character and position of structures from which employees might be liable to receive injuries, he cannot hold the master liable in case of injury. But the doctrine in regard to the assumption of risk by an employee applies only to the natural and ordinary risks, incident to the work in which the servant is engaged. It cannot be said, however, that, if the danger, from which the injury to appellant's intestate resulted, was the absence of the necessary number of fire-escapes, the absence of such fire-escapes was a natural and ordinary risk, incident to the work in which she was engaged. At any rate it was, under the circumstances, a question of fact to be decided by the jury, whether the deceased took the risk of the danger referred to or not. In *Huda* v. *American Glucose Co.* 154 N.Y,

474, it was said: "Of course it is not to be understood, from what has been said, that it necessarily follows, that employees would assume such risks, connected with the management of the business, as would result from a violation by the employer of the statute in a neglect to provide fire-escapes." (See also *Schwandner* v. *Birge*, 33 Hun, 186; 1 Shearman & Redfield on the Law of Negligence, sec. 217; 2 id. sec. 702*a*).

*Fifth*—It is further claimed on the part of appellees, that the absence of a fire-escape, if it was a cause of the injury which resulted in the death of the appellant's deceased, was only the remote, and not the proximate cause of such injury. It is said, that appellant cannot fasten any liability upon the appellees, unless she not only shows the omission by appellees of a duty, but unless she also shows that such omission of duty was the direct and proximate cause of the accident complained of. It is often difficult to determine whether the cause of an injury is the remote or the proximate cause thereof. Where, in the absence of a fire-escape, a person in a burning building is destroyed by the flames, it is unquestionably true that the fire is the proximate cause of the death, but yet it cannot be said that the absence of the fire-escape is not, in the view of the law, a proximate cause, if the presence of such fire-escape would have prevented the death. So, if a person in a burning building, where there is no fire-escape or none accessible, is forced to seek escape from the building by descent from a ladder or otherwise, it may be a question whether the defective condition of the ladder, or its unskillful use, is, in such a case, so far the proximate cause of the accident, as to make the absence of the fire-escape merely a remote cause. Certainly, the effort to escape in some other mode than by a fire-escape might be directly caused by the absence of such fire-escape. But we do not wish to be understood as expressing any opinion upon the question, whether the obstruction of the double window communi-

cating with the fire-escape, or an accident in connection
with the use of the fireman's ladder, was the proximate
cause of the death of appellant's intestate, or not. What
we decide is, that the question, what is the proximate
cause of an injury, is ordinarily a question to be deter-
mined by the jury under the instructions of the court.
In *Fent* v. *Toledo, Peoria and Warsaw Railway Co.* 59 Ill. 349,
we said (p. 362): "We understand  *  *  *  the position
of counsel for appellee to be that, if fire is communicated
from a locomotive to the house of A, and thence to the
house of B, it is a conclusion of law that the fire sent
forth by the locomotive is to be regarded as the remote,
and not the proximate, cause, of the injury to B; and the
railway company is, for this reason alone, to be held not
responsible.  This rule we repudiate as in the teeth of
almost numberless decisions, and as unsupported by that
reason which is the life of the law.  We hold, on the con-
trary,  *  *  *  that it is in each case a question of fact,
to be determined by the jury under the instructions of
the court.  *  *  *  If the fire is the consequence of the
carelessness of the railway company, and the question of
remote or proximate cause is raised, the jury should be
instructed that, so far as the case turns upon that issue,
the company is to be held responsible, if the loss is a
natural consequence of its alleged carelessness which
might have been foreseen by any reasonable person, but
is not to be held responsible for injuries which could not
have been foreseen or expected as the results of its neg-
ligence or misconduct."  In *Milwaukee, etc. Railway Co.* v.
*Kellogg*, 94 U. S. 474, it was said:  "The true rule is that
what is the proximate cause of an injury is ordinarily a
question for the jury.  It is not a question of science or
of legal knowledge.  It is to be determined as a fact, in
view of the circumstances of fact attending it."  (*Ford* v.
*Illinois Refrigerating Co.* 40 Ill. App. 222).

For the reasons above stated, we are of the opinion
that the court erred in taking the case from the jury,

and in instructing them to find the defendant not guilty. Accordingly, the judgments of the Appellate Court and of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*