107    39
a203s 536

## Chicago Screw Co. v. John Weiss, a Minor, by, etc.

1. MASTER AND SERVANT—*Servant Continuing Use of Defective Machine by Order of Foreman.*—A servant is not negligent in continuing to operate a machine after he has discovered that something is wrong with it, where his experienced foreman, when complained to, told him it was all right and to continue using it.

2. PROXIMATE CAUSE—*A Question of Fact for the Jury.*—Whether or not the defective condition of a lever was the proximate cause of an

injury is a question of fact for the jury under the instructions of the court.

3. INSTRUCTIONS — *Erroneous Instructions Not Reversible Error Where Substantial Justice Has Been Done.*—Where from inspection of the entire record it is apparent that substantial justice has been done an erroneous instruction is not sufficient to cause a reversal.

4. SAME—*Must be Read and Considered as a Series.*—The instructions of the court as to the law are all to be considered as one charge, and the jury are presumed to have considered them in that way.

5. ESTOPPEL—*Of Father to Sue for Loss of Minor's Services, Where He Acts as Minor's Next Friend in the Latter's Suit for the Loss of His Time.*—Where the father of a minor has acted as his next friend in a suit brought by the minor to recover for the loss of his time caused by a personal injury which is insisted upon by the father as an element of the son's damages, such action by the father is a bar to a recovery by the father for the loss of such services in a suit thereafter brought in his own name.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed February 26, 1903.

F. J. CANTY and J. C. M. CLOW, attorneys for appellant.

DARROW & THOMPSON, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for the sum of $3,500, rendered in an action on the case for negligence, by appellee against appellant. The declaration consists of two counts. In the first count the negligence averred is the permitting a machine which plaintiff was operating to become out of order. The negligence averred in the second count is, that the defendant commanded the plaintiff, who was a boy of the age of sixteen years, to operate a certain screw machine, which machine was dangerous, without informing him of the dangerous character of the machine, so that, by reason thereof, the plaintiff was injured, etc. The defendant pleaded the general issue.

We copy the following from the argument of appellant's counsel, which is substantially correct, as far as it goes :

" At the time of the injury he was working on a milling machine, and the work being done on it was finishing the

heads of screws and making them square. The milling tools (two in number) are on separate shafts or spindles, and face each other, and at the time they were about one-eighth of an inch apart, because the heads of the screws were to be one-eighth of an inch square. Each screw-head had to be shoved between the milling tools twice, two sides, of course, being cut flat at a time. The operation of the machine is extremely simple. The screw is placed in a head or holder; it is then turned in position in front of the milling tools; automatically, by an eccentric, the screw-head is shoved between the milling tools and drawn back; then the operator, by pushing the lever forward through one-quarter of a circle, turns the screw so that the other two sides will be presented to the tools; the screw is again shoved in and drawn back by the eccentric. The screw is now ready to be taken out. The holder is turned up from the tools, the screw taken out, another inserted, and the operation just described is repeated; and this is what is done with every screw.   *   *   *   A full description of the machine is difficult, and we think it would serve no good purpose to attempt it here."

The milling tools which cut the screw-heads are substantially described in the evidence as follows :   There are two small wheels about an inch or an inch and a half in diameter and about three-eighths of an inch in thickness, with notches on their edges, which wheels revolve rapidly on a shaft. These wheels or knives are, when being used, about one-eighth of an inch apart, or a distance apart equal to the required size of the screw-head. The operator stands in front of the machine and operates backward and forward, laterally, with his left hand, a lever which brings the screw-head in contact with the serrated milling tools or cutters. The lever so operated is about three and a half or four inches above the cutters, and on being moved as described, passes over the cutters. The accident occurred February 19, 1901, about eight o'clock in the morning. Appellee was then about seventeen years and four months old. He had been working in appellant's factory about a year at the time of the accident. He had worked for the greater part of the time on a shaver, which was something like a lathe, on which iron was made to revolve by machinery, and a

tool of some sort was held against the iron when revolving, to shape it as desired. The evidence tends to prove, and the jury was warranted in finding, that appellee had not before the afternoon of February 18, 1901, operated any machine like the one in question. In the afternoon of February 18th, the day before the accident occurred, one Tilton, assistant foreman of defendant, under whose superintendence and direction appellee was during all the time he worked in the factory, directed him to operate the machine and showed him how to do it, and appellee operated it about four and one-half hours that afternoon, as he testified. Tilton testified that his best impression was that appellee operated the machine five or six hours that afternoon. The next morning appellee commenced operating the machine at about seven o'clock, and the accident occurred about eight o'clock. While operating the lever appellee's hand slipped off it and the first joint of the little finger of his left hand was cut off. The injury resulted seriously, as will hereafter appear.

Counsel for appellant devote a great part of their argument to the contention that there can be no recovery under the second count of the declaration, but as the evidence of the appellee was mainly directed to proving the negligence averred in the first count, we will consider the evidence as to that negligence.

Counsel for appellant admit, in their argument, that the evidence as to the machine being out of order is conflicting. Appellee testified that when Tilton, the assistant foreman, undertook to show him how to work the machine, he, Tilton, started the machine, and that there was something wrong with it, and that Tilton then went over to the foreman; that afterward, in the afternoon of February 18th, the lever was troubling appellee; that it was loose, and he went to Tilton and told him it was loose, and that Tilton came to the machine and told him, appellee, it was all right, and that he should go ahead with the job. Appellee further testified that the screws which held the lever were loose; that you could not tighten them; that the next morn-

ing, February 19th, as he was pulling the lever back, it stuck, and his hand slipped off and got between the cutters and he was injured as heretofore stated. One of defendant's witnesses, Philip Schultz, testified that the screws above mentioned held the lever which appellee operated; that he examined the machine about ten minutes after the accident, and that there was a screw loose out of one of the heads; that all the others were worn out, and that there was a big play in the whole head. The screws which held the lever were connected with what the witness mentions as "the head." Tilton, whose testimony appears to us quite evasive and non-committal as to the condition of the machine, was questioned and answered as follows:

" Q. Now some time, I will put it that afternoon, after John was hurt, did you have any conversation with him in regard to how he happened to get hurt? A. Why, I asked him how he done it. I couldn't see or understand myself, and I asked him to come over and show me how it happened, and he did.

Q. Now tell the jury, make it as plain as you can, how he told you he got hurt. A. Well, this lever which revolves the head, to make it square, or hexagon, or oblong, or whatever shape it may be, projects out a little to the left, and in turning around it passes just a little over the —a little to the right, and grasping that lever, he says that he got hold of it that way, and pushed it a ways, and his hand slipped off and went in. That is as near as I can judge from his explanation.

Q. Did he say anything to you at that time about any screws being loose, or about the lever sticking? A. Well, I don't remember as to that particular time. That was one thing that occurred occasionally. That lever would stick once in a while."

Gale, a witness for appellant, testified that he saw appellee a few minutes after the accident, and asked appellee if he forgot himself, and that appellee said yes. The witness did not ask appellee how the accident happened, and if it is to be understood from his evidence that it happened because appellee forgot himself, it is inconsistent with the testimony of Tilton, above mentioned.

In view of the manner in which some of appellant's

witnesses were questioned and answered, as to the condition of the machine, their testimony on that subject was calculated to have but little, if any, effect on the minds of an intelligent and observant jury. The jury was fully warranted by the evidence in finding that the machine was in an unsafe and defective condition, as claimed by appellee.

Appellant's counsel claim that appellee was negligent. They seem to have taken especial pains to prove by appellee, in cross-examining him, that he was careful in operating the machine. They were successful in that regard, and there is no evidence that he was otherwise than careful. It can not be reasonably contended that appellee was negligent in continuing to operate the machine after he discovered that something was wrong with it, in view of the fact that his experienced foreman, when he complained to him, told him it was all right and to continue using it. Offutt v. Columbian Exposition, 175 Ill. 472, and cases there cited.

Counsel contend that the defective condition of the lever was not the proximate cause of the accident. Whether it was or not, was a question of fact to be determined by the jury, under the instructions of the court. Landgraf v. Kuh, 188 Ill. 484. The question was submitted to the jury as one of fact, by instruction 20, given at the request of appellant's attorneys, and the jury decided against the contention of appellant's counsel. We think the decision sustained by the evidence. It is claimed that instructions 1 and 2, given for appellee, are erroneous. We find no error in either of these instructions. An instruction similar to instruction 1, but applicable to a place in which to work, was approved in Libby, McNeill & Libby v. Scherman, 146 Ill. 540, 552. An instruction, the latter part of which is similar to instruction 2, was approved in Chicago Anderson Pressed Brick Co. v. Reininger, 140 Ill. 334, 340. Even if it can be said that the second instruction was in any respect erroneous, we do not deem the error sufficient to cause a reversal, being of opinion, from inspection of the entire record, that substantial justice has been done.

Appellant's counsel contend that instruction 2 does not, in terms, submit to the jury the question of appellant's negligence. Instructions are given, by whomsoever requested, as the instructions of the court, and are to be read and considered as a series. In Toluca, M. & N. Ry. Co. v. Haws, 194 Ill. 92, the court say :

" The instructions of the court as to the law are all to be considered as one charge, and the jury are presumed to have considered them in that way. Where one instruction may omit some needed qualification, and appears to be misleading when severed from its connection with the other instructions, it may not be misleading or incorrect when read with the others. If the instructions, taken as a whole, present the law to the jury with substantial correctness, it is sufficient."

By instruction 20, given at appellant's request, the question of appellant's negligence was submitted to the jury, and by it the jury was instructed, in substance, that unless they believed from a preponderance of the evidence that the appellant was negligent, as charged in the declaration, appellee could not recover. Instruction 3 for appellee is objected to on the ground that it authorizes the jury to assess damages for appellee's loss of time and inability to work. This objection seems to have been first made on the motion for a new trial. It proceeds on the ground that appellee being a minor, his time and earnings belong to his father, Franz Weiss. On the trial it was proved by appellee, without objection, that appellee earned at the factory one dollar per day, and loss of time of appellee was proved by another witness, who will hereafter be referred to, also without objection. Appellee sued by Rose Weiss, his sister, as his next friend. After the verdict Franz Weiss, appellee's father, was, on motion of appellee's attorneys, and on his own application, substituted for Rose, as appellee's next friend, and made an affidavit, stating that, by reason of his employment out of the city when the suit was commenced, he was then unable to act in the suit as appellee's next friend; also stating that he had been informed of the acts of Rose Weiss, appellee's next friend, and of the then status

of the cause, and that he ratified and confirmed all that had been done in the premises, and praying to be substituted as appellee's next friend. If the admission, without objection, of the evidence of appellee's earnings and loss of time, did not preclude appellant from making the objection mentioned, then the substitution of appellee's father, Franz Weiss, as next friend, obviated the objection. In Baker v. R. R. Co., 91 Mich. 298, the plaintiff, James H. Baker, sued the railroad company for damages by reason of the loss of the services of his son, Oscar Baker, during the latter's minority, and for money expended for nursing, medicine and professional treatment. The son had previously sued the company by his father, as his next friend, for damages occasioned by his having been run over and his leg broken by one of the railroad company's trains, including his loss of time, etc., the latter being the same damages sued for by James H. Baker, and recovered judgment. Held, that he could not recover, the court saying, among other things, "The fact that the father appeared and prosecuted as next friend was tantamount to a relinquishment of such loss of services." Ib. 306.

In the present case the father appeared, and, knowing everything which had been done in the suit, ratified everything which had been done, and was made next friend on his own application. We think it plain that, under such circumstances, he could not maintain an action for the loss of his son's time.

Appellant's counsel have assigned as error that the amount assessed as damages is excessive, but apparently they think this assignment unworthy of consideration, because they have neither mentioned it in their argument nor have they abstracted the evidence of Dr. Frank, the first witness called by the plaintiff, nor even mentioned his name. However, as the only evidence of the injury appearing in the abstract is that appellee lost the first joint of the little finger of his left hand, and as $3,500 may appear a large amount for such loss, we think it proper to refer to the evidence of Dr. Frank. He testified that he treated

the boy at a hospital in the city for an infected hand, which had part of a finger cut off; that he was suffering from blood poisoning, the effect of a wound; that the hand and the whole arm were undermined with pus; that he had to make several incisions in the arm to let out the pus; that the glands under the arm were infected, and he had to remove them; that appellee suffered from pain and fever; that the whole palm of the hand seemed to be rotten inside; that appellee was in the hospital two months; that the fingers, at the time of the trial, were bent inward toward the palm of the hand, and were rigid, and that his opinion was that the tendons had sloughed away and that the condition would continue.

The judgment will be affirmed.