## Edith A. McLean, Administratrix, v. William H. Dow.

### Gen. No. 11,850.

1. NEGLIGENCE—*when question of, should be submitted to jury.* Where the facts are such that reasonable men of fair intelligence may draw different conclusions from them, the question of negligence must be submitted to the jury.

2. PEREMPTORY INSTRUCTION—*nature of motion for.* Such a motion is in the nature of a demurrer to the evidence and hence it admits not only all that the evidence proves, but also all that it tends to prove.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed December 4, 1905.

ELA, GROVER & GRAVES, for appellant.

O. W. DYNES, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The deceased, John R. McLean, Jr., was killed January 6, 1899, by falling down an elevator shaft from the second story to the floor of the first story of the lumber mill of appellee situate in Waukegan, Illinois. In an action brought to recover damages for his death, the court, at the close of the plaintiff's case, on motion of the defendant, instructed the jury to find the defendant not guilty. From the judgment entered on the verdict thus directed this appeal was perfected.

The mill was about 100x130 feet in its outward dimensions, and was three stories in height. It was used for the manufacture of sash, doors and blinds. It contained the machinery, belting, shafting, etc., used in mills of that character and size; and upon the several floors was material manufactured and in the process of manufacture. The car-

penter shop occupied the second floor. The bench at which the deceased worked during the day before he met with this accident was in the southeast corner of the carpenter shop. The distance from that bench to the stairs leading down to the first floor was 75 feet. These stairs were near the southwest corner of the shop. Between the bench and the stairs were a small dry kiln, a glue room, each of which was closed by a door, and an elevator shaft about 6x7 feet in size. This shaft was closed by double doors opening outward. One of these doors was fastened by a peg which dropped down into a hole in the floor. On this door was a wooden button, about six inches long, which when turned horizontally against the outside of the other door held that door closed. When the button was turned so that it was perpendicular the second door was released and would open of its own motion. The stairway was guarded by a door which closed automatically.

The mill was lighted by electricity only. The same power which ran the other machinery also ran the dynamo, and therefore the light was shut down by the stopping of the engine.

At the date of his death the deceased was forty-five years old. He was an expert carpenter, a man of more than usual intelligence, in the full possession of all his faculties, industrious, sober, and careful to an unusual degree. His home was in Evanston, Illinois, twenty-five miles from Waukegan. He had never been in the mill until the day before he was killed, when he was there for a short time. January 6, 1899, he came to the mill in the morning and worked at his carpenter's bench all day. The weather was cold and a strong wind was blowing. At 5:35 P. M. the "closing down whistle" sounded. The witness John Lange, who had been in the employ of the defendant for some time, about three minutes before quitting time stopped work and put away his tools. When the whistle blew he took off his apron and put on his coat, overcoat and hat. As soon as the whistle blew the deceased picked up a brush and began brushing his clothes. The two men were talking. Lange looked around and seeing that the other workmen had left

the room, said to the deceased, "You want to get a hustle to get out of here. The lights will be going out in a few minutes or a few moments." Hearing this, the deceased got his overcoat and laid it over his arm. As he did so, Lange turned and walked to the stairs and went down them and out of the building.

W. F. Weise who worked at a bench about half way between the bench where the deceased worked and the stairway, says that when he turned to leave the room the deceased was stooping over his tool chest, and Lange had started for the stairway. This was the last seen of the deceased prior to his injury. An hour and a half later he was found at the bottom of the elevator shaft, semi-unconscious, with a small stick in his hand which he was rubbing along the floor. His overcoat lay near him. The elevator door on the second floor was open. He died thirty-six hours later from the injuries thus received. So far as this record shows, the deceased did not know that the action of the dynamo depended upon the engine only, and that as soon as the steam was shut off the lights would go out. The men who had worked in the carpenter shop a longer time knew this, and consequently each of them hurried to get out of the building. Some of them were in the habit of anticipating the whistle by putting up their tools and changing to their street dress before it was time for it to blow. Witnesses Gustafson, Mallory and Lange put away their tools or had their overalls off before the whistle sounded. There were from 15 to 18 men in the carpenter shop at quitting time. They all, except the deceased, left the building before the lights went out. It seems that the deceased was the last one to leave his bench. When W. F. Weise had gone 200 feet from the building he looked back and saw that the lights were out. When Andrew Gustafson was 100 feet from the mill he turned and the lights in the mill were not burning. When R. C. Mallory had gone 100 feet he also looked back and "the lights were dying out there." Henry Weise says that when he had walked 200 feet the lights were out. This witness also testified that generally the lights did not burn very long after the

whistle sounded, that at times he had to go down stairs in the dark, that sometimes the workmen would hurry each other for fear the lights would go out, and that when he packed his tools, or delayed a little, the lights went out before he left the second floor.

Not knowing how soon the lights went out after the whistle sounded, the deceased, being unwarned, for the remark of Lange that he had better "hustle," etc., obviously, or at least presumably, came too late, had not reached the stairs when the building was shrouded in darkness; and it seems in groping around for the stairway door he either passed through the elevator door, if it was open, or if it was shut, turned the button and then stepped into the shaft and fell to his death.    It was not only the duty of the defendant to furnish to the plaintiff a reasonably safe place to work, but it was also his duty to furnish him, when the time came to quit his work, for a reasonable time thereafter, a reasonably safe exit from the mill.    The questions, therefore, arise, were these lights necessary in order that one unacquainted with the premises might leave the mill in safety, and were they extinguished that night so soon after the whistle sounded that an unwarned man did not have a reasonable time in which to put away his tools, resume his street dress and leave the carpenter shop in safety?

Where the facts are such that reasonable men of fair intelligence may draw different conclusions from them, the question of negligence must be submitted to the jury.    C. & N. W. Ry. Co. v. Hansen, 166 Ill., 623.

On a motion by the defendant that the jury be instructed to find for the defendant, the trial judge cannot weigh the evidence to ascertain where the preponderance lies; he is limited strictly to determining whether there is, or is not, evidence legally tending to prove the fact affirmed.    When the evidence must be weighed to determine on which side the preponderance is, the issue should be submitted to the jury, subject to the power of the court to grant a new trial if the verdict should be against the clear preponderance of the evidence.    Such a motion is in the nature of a demurrer

12

to the evidence, and hence it admits not only all that the testimony proves, but also all that it tends to prove. Rack v. C. C. Ry. Co., 173 Ill., 291; Landgraf v. Kuh, 188 Ill., 484; Joliet Ry. Co. v. McPherson, 193 Ill., 629; C. C. Ry. Co. v. Martensen, 198 Ill., 511; Woodman v. Ill. T. & S. Bk., 211 Ill., 578.

From a careful examination of this record we are convinced that there is evidence therein of negligence on the part of the defendant and of due care for his personal safety upon the part of the plaintiff's intestate, which should have been submitted to the jury under proper instructions. It follows that the action of the court in directing the jury to find the defendant not guilty was reversible error.

We therefore reverse the judgment of the Circuit Court and remand the cause.

*Reversed and remanded.*