[No. 12153.   Department One.   January 11, 1915.]

## H. M. CLARKE, *Respondent*, v. YUKON INVESTMENT COMPANY, *Appellant and Respondent*, PURCELL INVESTMENT COMPANY *et al.*, *Respondents and Appellants.*[1]

LANDLORD AND TENANT—REPAIRS — LIABILITY OF LANDLORD — FIRE ESCAPES—POLICE REGULATIONS.   Rem. & Bal. Code, § 6030 *et seq.*, relating to hotels, inns, and public lodging houses, regulating the construction of fire escapes therefor, and providing (§ 6046) that "any owner, manager, agent or person in charge of a hotel" who shall violate the provisions of the act shall be guilty of a misdemeanor, has reference to the owner of a hotel business (under lease without restrictions upon the use or covenants to repair) and not the owner of the building (out of possession); and hence, where fire escapes are required upon a hotel building under the exercise of the police power, the duty and expense of construction devolves upon such a lessee where there is no covenant in the lease imposing such duty on the landlord.

Appeal from a judgment of the superior court for King county, Albertson, J., entered March 9, 1914, in favor of the plaintiff, in an action to foreclose a mechanics' lien, tried to the court.   Reversed as to one defendant.

*Bausman, Kelleher, Oldham & Goodale*, for appellant Yukon Investment Company.

*Walter B. Beals*, for respondent Clarke.

*Hughes, McMicken, Dovell & Ramsey* and *Gay & Kelleran*, for respondent Purcell Investment Company.

CHADWICK, J.—The Yukon Investment Company is the owner of a certain brick building in the city of Seattle known

[1]Reported in 145 Pac. 624.

as the Tourist Hotel property. The Purcell Investment Company held the premises under a long term lease. The lease contained the following provisions:

"Lessee agrees to keep said premises in good repair, and to make all necessary repairs of whatever nature to said premises. . . . That it is the understanding and intent of the parties hereto that said lessor shall not be required to expend any money on said premises during the term of this lease except for taxes, general and special. . . . That lessee . . . shall not suffer or permit therein any violation of any of the laws of the state of Washington, or of any of the ordinances of the city of Seattle. . . . It is provided that all such alterations are to be paid for by the tenant."

After the lease had run for about two years, the city of Seattle, through its proper agents, notified the Yukon Investment Company that it would be necessary to install an additional fire escape. The company replied that the property was held under a long term lease and disclaimed liability. Whereupon the city notified the Purcell Investment Company. The agent of the Purcell Company had certain negotiations with the Yukon Company out of which, as it is alleged in the pleadings, a contract to pay for the fire escape arose, and that it thereafter acted only as the agent of the Yukon Company. In any event Purcell negotiated with plaintiff for the installation of a fire escape, accepting the proposal to do so in writing as follows:

"The H. M. Clarke Iron & Wire Works,     June 28, 1913.
    "1926-29 Western Avenue, Seattle, Washington.
    "Gentlemen:   Confirming our telephone conversation of this date, we accept your proposal of the 24th inst., to build and install the fire escape and balconies on the Tourist Hotel Bldg., cor. Occidental Ave. and Main Street, for the sum of nine-hundred forty-eight and no-100 dollars ($948), same to be in accordance with drawings furnished and in compliance with city ordinances. Yours very truly, Purcell Investment Company, by P. F. Purcell."

We agree with the trial judge that there was hardly a pretense of sustaining this theory of the case upon the trial.

Certainly the Purcell Company did not maintain the burden of proof, and we shall not review the testimony but proceed at once to discuss the legal phases of the case.

In the absence of a covenant to make repairs or to keep the property in proper condition for the uses intended, there is no liability on the part of the lessor to do so. It has been so held by us in *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927; *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917; *Johnston v. Nichols, ante* p. 394, 145 Pac. 417. The Yukon Company insists that it is not liable (a) under the express terms of the lease, and (b) by a fair construction of the whole act, ch. 29, Laws of 1909, p. 43 (Rem. & Bal. Code, § 6030 *et seq.*), it is evident that the legislature intended it to apply only to an owner who is in possession and who is conducting a hotel business, and the conclusion is compelled that all of the burdens of the act should be borne by the business. Counsel cite: *McManamon v. Tobiason*, 75 Wash. 46, 134 Pac. 524; *Rockwell v. Eiler's Music House*, 67 Wash. 478, 122 Pac. 12, 39 L. R. A. (N. S.) 894; *Hayton v. Seattle Brewing & Malting Co.*, 66 Wash. 248, 119 Pac. 739, 37 L. R. A. (N. S.) 432.

This court has held that, where premises are let under general terms, no restrictions being put upon the use, the lessee having the privilege to use them for all lawful purposes, the landlord is not bound to meet a burden imposed by a statute or an ordinance, whether that burden be in the form of money expended to meet the demands of the sovereignty or whether the use to which the property is put is impaired or destroyed in virtue of the statute or ordinance. The theory being that one who leases property without restriction as to use takes under an implied obligation to meet every expense incident to the use to which it may be put, whether induced by considerations of convenience or profit, or whether compelled by superior authority. If it were not so, a landlord might be called upon to meet the cost of fire

escapes if the lessee decided to open a rooming house. If that use proved unprofitable, the tenant might use the property as a theatre or picture show and the landlord would be compelled to provide such additional exits and escapes as the statutes and ordinances require, or, that venture failing, he might be called upon to meet the expenses of adapting the premises to the requirements of a restaurant if the lessee willed to engage in it.

In the *Hayton* case, it was held that a *permission* to use the property leased for saloon purposes did not restrict the use of the premises for other lawful purposes, and a retirement from that business under compulsion of the local option law did not terminate the lease. The governing principle, *i. e.*, a landlord will not be held to meet the burden of an exercise of the police power, would seem to apply here.

In the *Rockwell* case, there was no restriction upon the use of the demised premises. It was alleged that the property had been used for public shows and entertainments; that the lessor knew that the property had been leased for the purpose of carrying on a moving picture show; that the lessee did not know, and the lessor did not disclose to him, that the premises could not be so used or be used for the entertainment of audiences "until an exit for escape in case of fire" had been made in the building. It was agreed in the lease that the lessee should make repairs and permanent improvements. The lessor refused to make the exit at its own expense when notified by the chief of the fire department to do so. An action was brought as for an abandonment of the lease by the lessor. We held:

"That the use of the premises was not limited by the terms of the lease; that the lease is complete in itself; that the respondent did not engage to make any repairs or improvements upon the premises; that the appellant did engage to make certain improvements; that both parties were bound to take notice of the police regulations of the city where the subject-matter of the contract was situated; that there is no

averment that the respondent misled the appellant, or that it refused to permit him to construct the exit upon the wall of the building without the terms of the lease; that upon the cancellation or surrender of the lease, the appellant was obligated to pay all rent that had accrued by the terms of the lease, and that the complaint, when read with the lease, shows no breach of any of its terms or of any legal duty upon the part of the respondent."

The logic of this decision is that parties may make any lawful contract and, in the absence of a stipulation specifically covering the disputed right, the contract is made subject to, and with implied knowledge of, police regulations, present and prospective, which may affect the use of the property while subject to the tenancy.

The *McManamon* case rests upon the same principle. There the building was, by apt terms, let for hotel purposes and such business as is generally incident to the hotel business. It could not be used for any other business without the written consent of the lessor. There as here the agency of the state, exercising its police power, made certain demands in the interest of the safety of guests and patrons. Here we have an order to install an additional fire escape; there the order was to provide ventilation in certain of the bedrooms, which if complied with required changes and alterations— permanent improvements, considering the use to which the lessor had restricted the use of the building. It was held, upon the ground of insufficiency of the evidence, that a recovery for the expense of the alterations and improvements could not be had. It may be said *arguendo* that a recovery should have been allowed irrespective of the contract if the theory of the Purcell Company is a correct conception of the law, for the improvement was of a permanent character, not within the contemplation of the parties except as the law charged them with notice of possible safeguards in aid of patrons of the hotel. The *McManamon* case is an apt authority to sustain our reasoning that, while there may be a

contract liability for improvements, no such liability arises under the statute where the improvement is compelled by public authority as an incident to the use to which a tenant puts the property.

Counsel for the Purcell Company have cited many cases, *Zeibig v. Pfeiffer Chemical Co.*, 150 Mo. App. 482, 131 S. W. 131, being a fair type of all of them, to sustain its contention that where a statute is in terms similar to Rem. & Bal. Code, § 6040 (P. C. 243 § 21), that is,—"every owner, manager, agent or person in charge of a hotel who shall fail to comply with any of the provisions of" the law shall be guilty of a misdemeanor, puts the burden of providing and paying for any improvement which becomes a permanent part of the structure upon the owner of the property. The whole contention of the Purcell Company is stated in the *Zeibig* case:

"As between the owner and the lessee, aside from any contract, the obligation of the law is not identical with that which obtains with reference to the public, for in such circumstances the duty of constructing the fire escape rests primarily upon the owner of the property. . . . It is true, as a general proposition, that by the common law the burden of repairs on the demised premises rests upon the tenant, and, unless he covenants to do so, the landlord is not required to construct appurtenances nor repair the premises after having placed them in the possession of the lessee. . . . But to this general rule there is a well established exception which obtains with respect to the construction of such permanent improvements or fixtures as fire escapes, where the duty is enjoined by a positive statute as here. . . . It thus appears that as between the plaintiff owner and the defendant lessee the obligation to construct the fire escape primarily obtains against the owner of the property and no recovery may be had against the defendant on account thereof unless it covenanted to do so. The mere fact that defendant leased the premises for business purposes with knowledge that the fire escape which the law required had not been constructed will not imply a covenant to the effect that it should assume the

burden suggested; for implied covenants in leases are such only as the law raises from the relation of the parties or from the use of certain terms in establishing that relation."

Other cases relied on are: *McAlpin v. Powell*, 70 N. Y. 126, 26 Am. Rep. 555; *Willy v. Mulledy*, 78 N. Y. 310, 34 Am. Rep. 536; *Landgraf v. Kuh*, 188 Ill. 484, 59 N. E. 501; *Johnson v. Snow*, 201 Mo. 450, 100 S. W. 5; *Carrigan v. Stillwell*, 97 Me. 247, 54 Atl. 389, 61 L. R. A. 163; *Arms v. Ayer*, 192 Ill. 601, 61 N. E. 851, 85 Am. St. 357, 58 L. R. A. 277.

The *Zeibig* case, as well as the *Arms* case, fell under a statute which required the owner or lessee of *all* buildings having a height of three or more stories and used for business purposes to provide outside fire escapes. It is distinguished because the statute makes a fire escape a component part of, and presumptively a benefit to, a structure irrespective of particular use.

The *McAlpin* case and the *Willy* case were decided under an act chartering the city of Brooklyn. It provided that *any* dwelling house of more than two stories in height, and *any* building of more than two stories in height, when occupied as a hotel, boarding or lodging house, factory, mill, offices, manufactory, or workshops, shall be provided with fire escapes, etc.

The *Landgraf* case, was also a case under a statute providing that "*all* buildings in the state which are more than four stories, etc.", shall be provided with fire escapes. Owners, trustees, lessees and occupants were made answerable to the law.

In the *Carrigan* case, the controlling statute was comprehensive. It required fire escapes to be put upon "*every* building upon which *any* trade, manufacture or business is carried on, etc." Unless these cases fit our statute, they cannot be held to be controlling for admittedly there is no common law liability. *Landgraf v. Kuh, supra; Pauley v. Steam-*

*Gauge & Lantern Co.*, 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194; *Jones v. Granite Mills*, 126 Mass. 84, 30 Am. Rep. 661.

Chapter 29, Laws of 1909, p. 43, is made by its terms applicable to a business, and not to *any* or *all* buildings. The title of the act is,

"An act relating to hotels, inns and public lodging houses, creating the office of State Hotel Inspector, and providing penalties for the violation thereof, and making an appropriation therefor."

It provides for fire escapes, rope escapes, fire extinguishers, gongs, a sufficient supply of bedding and towels; the dumping of ashes; for disinfection and fumigation after contagious diseases; for sanitation and sanitary plumbing; for inspection, and, following a failure to observe the demands of the law, it provides:

"Sec. 17. Any owner, manager, agent or person in charge of a hotel who shall obstruct or hinder an inspector in the proper discharge of his duties under this act, or who shall refuse or neglect to pay the fee for inspection prescribed herein shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten dollars ($10) nor more than one hundred ($100) dollars or shall be imprisoned in the county jail for not less than ten days, nor more than three months or both." Rem. & Bal. Code, § 6046.

This section, when taken in connection with the other sections of the act, must mean the owner of the hotel business and not the owner of the building, for surely the lessor would not be punished for failing to properly plumb a building, or to furnish fire extinguishers, gongs, or rope fire escapes to meet the necessities of the lessee's business.

The distinction between the cases relied on and the one at bar is noticed in *Lee v. Smith,* 42 Ohio St. 458, 51 Am. Rep. 839, where, under a statute providing that

"Any owner or agent for owner of any factory, workshop, tenement house, inn or public house, if such factory, work-

shop, tenement house, inn or public house be more than two stories high, to provide  .  .  .  a fire escape"

it was held:

"The owner of a building and the owner of a factory which is conducted in the building, may be different persons, and when this is so, the owner of the factory and not the owner in remainder or reversion of the building, is the person on whom the statute imposes the duty.  .  .  .  Again, in the absence of all legislation on the subject, the common law, founded on principles of right and justice, implies, from the relation of master and servant, a duty on the former to provide reasonable means for the safety of the latter.  Hence it is more reasonable to infer that the legislature intended to impose the duty required by this statute upon the owner of the factory, who assumes the relation of master to those employed therein, and for whose safety the duty imposed by this statute is enjoined, than to hold that it was intended to impose the duty upon the owner in fee of the factory building, who may not sustain any relation to the employees in the factory from which the duty to provide for their safety could be implied, and who may not even know that his building is being used as a factory or workshop."

We assume that the same rule would apply as between innkeeper and guest.  To the same effect is *Schott v. Harvey*, 105 Pa. St. 222, 51 Am. Rep. 201:

"A number of authorities were cited showing the construction which has been placed upon the word 'owner' both by the legislature and the courts.  But the meaning of the word depends in a great measure upon the subject matter to which it is applied, and as it is used in each of the instances cited in an entirely different connection, they throw scarcely a glimmering of light upon the question.  The term 'owner' is undoubtedly broad enough to cover either view of the case. A tenant for years, a tenant for life, and a remainder man in fee is each an owner.  So there may be a legal and an equitable estate; the trustee and the *cestui que trust* are both owners.  When, therefore, the legislature used a term of such varied meaning we must presume they intended such an owner as is in the possession and occupancy of the premises, who has the immediate dominion and control over it, and the man-

ner of whose use of it makes a fire-escape necessary. Had the owner in fee been intended it was easy to have said so. This view meets all the requirements of the act. It places the responsibility where it properly belongs, upon the person in the possession and occupancy of the property as owner for the time being, and the nature of whose business renders the erection of fire-escapes necessary to protect the lives of his employees."

This case was followed in *Kelly v. O'Conner*, 106 Pa. St. 321, where it was said:

"The Act of 1879 is certainly a highly penal statute; it imposes a duty unknown to the common law, and cannot be extended by implication to parties who do not clearly come within its terms; the authorities which have been cited are cases involving common law liabilities, and we do not think they have application here."

In all of the cases relied on, the lessor was held because the law charged the improvement against the building irrespective of the character of the business, or because it was of a certain height, while with us the additional fire escape is required under a special statute, and only in consequence of the particular business in which the lessee may engage and in which the lessor has no interest.

Our conclusion seems to us to be sustained by the better reason. In the case at bar, the lessee took the property *caveat emptor*. It knew that, in the exercise of its contract, the state or municipality might from time to time make demands in the interest of safety, and which might involve expense. The law rests upon the theory of benefit to property or business. It cannot be assumed that the improvement will be of benefit or use to the lessor at the expiration of the lease in 1921. Shifting trade centers, more engaging offers of rent from mercantile establishments, warehousemen, and wholesalers, might make the premises no longer adaptable for hotel purposes, thus rendering the additional fire escape no longer a necessity under any law or any ordinance of the city. We would then have the utterly uncontemplated result,

a landlord meeting an expense for an improvement beneficial and necessary only to his lessee and from which he would reap no benefit or advantage now or hereafter.

A judgment has been heretofore entered affirming the judgment of the court below as to the Purcell Investment Company. The judgment of the lower court as to the Yukon Investment Company is reversed, and the case is remanded with instructions to dismiss as to it.

CROW, C. J., GOSE, MORRIS, and PARKER, JJ., concur.