[No. 12015.  Department Two.  February 13, 1915.]

LODGE ROOM COMPANY, *Respondent*, v. PACIFIC BOND & INVESTMENT COMPANY, *Appellant*.[1]

LANDLORD AND TENANT—ALTERATIONS—LIABILITY OF TENANT.  Liability for the construction of a fire escape in case of use of premises for assembly purposes, as required by city regulations, falls upon the tenant and not the landlord, where, by the terms of the lease, the premises were let for the special purpose of lodge and club rooms and offices, the lessee was given the premises rent free for at least one and possibly three weeks in order to make, without expense to the landlord, the necessary alterations for which a city permit was granted upon application of the lessee immediately after the lease was executed; and, while the lessor's consent was necessary, it was further provided that he should not be liable for alterations contracted for by the lessee; since the lessee was chargeable with knowledge of the police regulations governing the use of the building, and accepted the premises in their existing condition unfitted for the purpose. for which they were leased.

Appeal from a judgment of the superior court for King county, Humphries, J., entered June 5, 1913, upon findings in favor of the plaintiff, in an action on contract, tried to the court.  Reversed.

*Chas. P. Harris*, for appellant.

*F. J. Carver* and *John Slattery*, for respondent.

[1]Reported in 146 Pac. 376.

ELLIS, J.—Plaintiff is the lessee of the third floor of an office building in the city of Seattle, under a contract of lease entered into with the defendant on January 17, 1912, the term of the lease being from that date until November 10, 1915, at a monthly rental of $125. The provisions of the lease material to this action are as follows:

"    .  .  .   said rent shall commence on the first day of February, 1912; the period between the date of this lease and said seventh day of February, 1912, being allowed to the lessee without payment of rent, for the purpose of making alterations.

"That the lessee hereby covenants and agrees to keep said premises in good repair and to deliver up the same without notice at the expiration of this lease, in as good condition as reasonable use and wear thereof will permit, damage by the elements or fire excepted.

"That the lessee shall use said premises for the purpose of lodge and club rooms and offices and for no other purpose without the written consent of the lessor, and that the lessee shall not carry on or permit to be carried on, any business not in conformity with the laws of the United States and of the state of Washington and the charter, ordinances and requirements of the city of Seattle.

"That the lessor shall have the right to enter said premises at all reasonable times and to make any necessary repairs thereto, but this shall not be construed as an agreement on the part of the lessor to make any repairs whatsoever.

"That the lessee shall not make any alterations on said premises without the written consent of the lessor, and in no case shall the lessor be held liable for any work, labor or materials contracted for by the lessee or furnished at their request in or about said premises.

".  .  .   that it is understood that the lessee is going to use said premises as lodge and club rooms and offices, and that it is understood that said lessee may sublet said premises to lodges, clubs, and for office purposes, and for entertainments in general, and for such purposes as lodge rooms and club rooms and offices are ordinarily used."

At the time the lease was entered into, the building was equipped with a ladder fire escape which would permit the use

of the third floor for almost any purpose except as a lodge or assembly room. The third floor of the building was twenty-seven feet above the street level. The ordinance of the city of Seattle touching the construction of assembly halls provides, among other things, that:

"Section 151 . . . No portion of the main floor of any assembly hall within the limits of the first and second building districts except in Class A buildings, shall be more than . . . twenty-five feet above said grade, if said hall shall accommodate less than five hundred persons." Seattle Ordinance, No. 17,240, § 151.

The grade referred to is the street grade at the main entrance. This building was not of Class A construction.

Immediately after the execution of the lease, the plaintiff entered into possession, and applied to the building department of the city of Seattle for a permit to make the necessary alterations and repairs to fit the third floor for lodge and club rooms. The permit was refused because the floor was two feet higher than the ordinance limit. It was, however, finally granted on condition that a stairway fire escape be constructed on the outside of the building before use for the purposes intended. The plaintiff thereupon notified the defendant of this requirement, but the parties could not agree as to who should erect the fire escape. In the early part of April, 1912, plaintiff caused the fire escape to be constructed and made the other alterations required to adapt the premises for lodge and club room purposes.

Plaintiff brought this action against defendant to recover the cost of constructing the fire escape, the loss incurred because of the delay of two months in the use of the premises, and also for an attorney's fee incurred in the negotiations with the city of Seattle. The lower court found in favor of the plaintiff and gave judgment against the defendant for $495. Defendant appeals.

The sole question presented is whether, under the terms of the lease and under the law, it was the duty of the appel-

lant to construct the stairway fire escape. The lease itself makes it plain that both parties contemplated that some alterations would be necessary to fit the premises for the proposed use, and that the respondent should pay for such alterations. The respondent, lessee, was allowed possession, rent free, for at least seven days, and if the date of the lease be controlling, possibly three weeks, for the purpose of making such alterations. It covenanted to make no alterations without the written consent of the appellant lessor, and that in no case should the appellant be liable for work, labor or materials furnished or used at respondent's request in or about the premises. While the lessor reserved the right to enter to make necessary repairs, there was an express stipulation that this should not be construed as an agreement on its part to make "any repairs whatsoever." A clearer acceptance by the respondent of the premises in their then condition with an assumption of the risk of any defect unfitting them for the purposes intended can hardly be conceived.

The case is distinctly ruled by two recent decisions of this court, *Rockwell v. Eiler's Music House*, 67 Wash. 478, 122 Pac. 12, 39 L. R. A. (N. S.) 894; and *McManamon v. Tobiason*, 75 Wash. 46, 134 Pac. 524. The first of these is analogous to the case in hand, save that the lease there in question contained no restriction as to the lawful uses to which the premises might be put by the tenant. This was held only one reason why the landlord's "failure to disclose" the fact that the premises could not be used, under the city ordinances, as a theater until an exit had been constructed was no actionable breach of the lease. The other reason which we there held sufficient to preclude a recovery by the tenant was that found here, namely, that the tenant was charged with knowledge of the provisions of the city ordinances, when he accepted the premises without exacting an express covenant that they should comply with the ordinances governing theater buildings. On this phase of the *Rockwell* case there can be no

possible distinction from the case here.  As we said in that case:

"All persons who contract within the limits of a municipality in reference to matters which are governed by police regulations are charged with knowledge of their provisions."

In *McManamon v. Tobiason, supra,* provisions are quoted from the lease involved the same in every substantial particular as those found in the lease here.  The premises were to be used solely for a hotel and such other business as is generally incident thereto.  The tenant could make no alterations without the lessor's consent, and agreed to pay for any alterations made.  We held that the lessor was not liable to the tenant for damages for failure to make certain alterations required by the hotel inspector, in the absence of an offer on the tenant's part to pay for such alterations.  See, also, *Clarke v. Yukon Investment Co.,* 83 Wash. 485, 145 Pac. 624.

The case of *Hayton v. Seattle Brewing & Malting Co.,* 66 Wash. 248, 119 Pac. 739, 37 L. R. A. (N. S.) 432, which the respondent cites, is clearly distinguishable in that the adoption of the law prohibiting the sale of intoxicating liquors under local option took place subsequent to the making of the lease and could not have been in contemplation of the parties at the time the lease was made.  Even in that case, however, it was held that the prohibition preventing the use of the building for the known purpose for which it was leased did not terminate the lease, for the reason that the lease contained no restriction of the use of the premises to saloon purposes.  The case here is wholly different.  As we have seen, the parties are presumed to have contracted with reference to the known provisions of the existing ordinances, and if the tenant did not intend to assume the duty of making the premises comply with such ordinances in order to meet the use for which it took the lease, it should have exacted a stipulation fixing that duty upon the lessor.

A review of the several decisions from other jurisdictions cited by respondent would be of no profit, since the case is

clearly governed by the two cases which we have cited and discussed. We are clear that the respondent, having undertaken to make the necessary alterations at its own expense, and having contracted with the full knowledge of the provisions of the city ordinances which is charged to every citizen, could not thereafter complain that the failure of the appellant to make the premises conform to those ordinances in order that they might be used for a lodge room was a breach of any of the terms of the lease, either express or implied.

The judgment is reversed, and the case is remanded for dismissal.

CROW, MOUNT, MAIN, and FULLERTON, JJ., concur.