Argued April 12; affirmed June 1, 1944

# NASH *v.* GORITSON

(149 P. (2d) 325)

Before BAILEY, Chief Justice, and BELT, LUSK, BRAND and HAY, Associate Justices.

*Arthur I. Moulton,* of Portland (Moulton & Davis and V. E. Harr, all of Portland, on the brief), for appellant.

*E. K. Oppenheimer,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for respondent.

BELT, J.

This is an action to recover damages for personal injuries sustained on January 24, 1942, by plaintiff when a large plate glass window fell upon him as he was walking along 11th street in the city of Portland. The building from which the glass window fell was owned by the defendant. There were six tenants in the building. The particular room on the ground floor, from which the glass was blown out during a violent wind storm, was, at the time of the accident, leased to a Chinese named Chin Jing. Chin Jing commenced operating a restaurant in such room in October, 1941, and continued such business until December 15, 1941. At the time plaintiff was injured, the room was unoccupied but the lease had not expired and the equipment

of the lessee remained in the room as he intended to reopen the restaurant. The lessee had paid rent until February 1, 1942, at which time respondent lessor took possession.

Plaintiff relied exclusively upon the rule of *res ipsa loquitur* to establish a *prima facie* case. It was alleged in the complaint that the glass window in question was "wholly under the control and management of the defendant." There was no evidence that the window, at the time the lease was made, or thereafter, was in a defective condition or that it had been improperly installed. Defendant introduced evidence tending to show that the quarter-inch plate glass window, 7' x 14' in dimension and consisting of three sections of glass held in place by metal strips, was standard equipment and had been properly installed.

At the conclusion of the evidence, the court directed a verdict in favor of defendant. The motion for a directed verdict was based upon two grounds: (1) There is no evidence showing that the defendant was in control of the premises, or responsible for the condition of the premises; (2) It was an inevitable accident or an act of God.

■■ The vital question is whether the rule of *res ipsa loquitur* can, in the light of the facts, be invoked against the defendant, the owner of the building. We think the rule has no application herein for the reason that plaintiff has failed to introduce evidence tending to show that the defendant, in keeping with the allegations of the complaint, had control of the instrumentality alleged to have caused the injury. Control of the glass window by the person against whom negli-

gence is charged is an essential element of plaintiff's case. As said in 38 Am. Jur. 997, Negligence, § 300:

> "The doctrine (res ipsa loquitur) does not apply where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury."

In Shearman & Redfield on Negligence (Revised Edition), Vol. 1, p. 153, Evidence § 56, it is said:

> "Control is a necessary prerequisite to application of the rule of res ipsa loquitur. The rule is predicated, amongst other things, upon the condition that the agency which has produced an injury is within the exclusive possession, control and oversight of the person sought to be charged with negligence."

Such also is the well-established rule in this state: *Landers v. Safeway Stores,* 172 Or. 116, 139 P. (2d) 788; *Asheim v. Fahey,* 170 Or. 330, 135 P. (2d) 246, 145 A. L. R. 861; *Doherty v. Arcade Hotel,* 170 Or. 374, 134 P. (2d) 118; *Dittert v. Fischer,* 148 Or. 366, 36 P. (2d) 592; *Gillilan v. Portland Crematorium Ass'n,* 120 Or. 286, 249 P. 627; *Suko v. Northwestern Ice Co.,* 166 Or. 557, 113 P. (2d) 209; *McPherson v. Oregon Trunk Railway,* 165 Or. 1, 102 P. (2d) 726.

■ Ordinarily, a window, if properly constructed and installed, will not fall out and, if it does, under the circumstances disclosed by the evidence in this case, a reasonable inference of negligence may be drawn. But, against whom? Is such inference of negligence to be permitted against a person who had no control or management over the instrumentality causing the damage? We think not. The rule applicable herein is thus stated in 36 C. J. 239, Landlord and Tenant, § 948:

> "Even though the premises leased are but a part of the whole building, and although the landlord

may have rented the same to several tenants, he will not be liable for personal injuries to a stranger when they were due to defects in that part of the premises which was used exclusively for, and in connection with, that part of a building leased by a tenant.''

██ The written lease introduced in evidence does not contain any covenant by the landlord (defendant herein) to make repairs. The lease, however, did provide that the lessor had the right at reasonable times to ''enter into and upon the same (premises) to examine the condition thereof.'' This reservation for the purpose of inspection, however, is not equivalent to a covenant to repair. As said in 32 Am. Jur. 523, Landlord & Tenant, § 657:

''Reservation by a lessor of the right to enter upon the leased premises for various purposes and to make repairs and alterations, if he should elect to do so, implies no reservation of control over the premises which will render him chargeable with their maintenance and repair.''

Furthermore, there is no evidence tending to show that reasonable inspection by the lessor would have disclosed any structural defect in the window.

If the window was in a defective or dangerous condition, it was the duty of the tenant to make the necessary repairs: *Asheim v. Fahey,* supra; *Teel v. Steinbach,* 135 Or. 501, 296 P. 1069; *Fleischner v. Citizens' Inv. Co.,* 25 Or. 119, 35 P. 174; Tiffany, Law of Real Property, § 103. We are not dealing with a case where, at the time of the demise, the landlord knew or in the exercise of reasonable care ought to have known of the dangerous condition of the building. Under such circumstances, the fact of having leased the property would not relieve the owner of his duty to protect third

parties or "strangers" from injury: *Walsh v. South-western Bell Telephone Co.,* 331 Mo. 118, 52 S. W. (2d) 839.

If the lease were eliminated from this case an entirely different question would be presented. Cases, therefore, against the owner of a building not under lease are not in point. Neither are cases involving common passage-ways or stairs over which the landlord has control and management: 32 Am. Jur. 561, 567, Landlord & Tenant §§ 688, 691. We can also exclude from consideration cases involving the falling of signs, awnings, lamps, or other articles attached to a building occupied by several tenants. See Annotation, 45 A. L. R. 800.

■ It is urged that defendant can not rely upon the lease for the reason that it was not pleaded as a defense. We think the lease was admissible under a general denial as it tended to disprove the charge that defendant was in control and management of the window alleged to have caused the injury.

*Kelly v. Laclede Real Estate & Investment Company,* 348 Mo. 407, 155 S. W. (2d) 90, 138 A. L. R. 1065, is the strongest case tending to support the claim of liability against the defendant owner. In that case, a piece of terra cotta fell from the building wall above the sidewalk and struck the plaintiff who was in the street adjacent to the building. At the time of the accident, the building was owned by the Laclede Real Estate & Investment Company and was leased to the defendant Caradine Hat Company. Under the terms of the lease, the lessor reserved the right to enter upon the premises for the purpose of examining the condition thereof and making any repairs it saw fit to make. There was some evidence of a structural

defect in the terra cotta trimming or cornice on the building, which existed at the time the lease was made. The court, referring to this evidence, said:

" 'Such a condition constitutes a nuisance, and it is not material that the building was not constructed by the owner or that the tenant has obligated himself to repair   *   *   *.' "

The court also held that *res ipsa loquitur* applied to both the lessor and the lessee notwithstanding the fact that the premises "were in the exclusive possession of the tenant who had expressly agreed with the landlord to keep the premises in repair." We agree that there was evidence tending to show a breach of duty on the part of both the landlord and the tenant and, therefore, they must be considered as joint tort-feasors. But we are unable to see wherein the doctrine of *res ipsa loquitur* could have any application to a landlord who had no control or management of the instrumentality causing the damage. Such holding is certainly not in accord with the weight of authority or with the decisions of this court.

In *Appel v. Muller,* 262 N. Y. 278, 186 N. E. 785, 89 A. L. R. 477, relied upon by appellant, a pedestrian was injured by glass which fell from a window which had been broken about a week prior to the accident. Tenant and owner were immediately notified of the defective condition of the window but did nothing about it. The owner, under the terms of the lease, had covenanted to make repairs. Under such circumstances, it was his duty to maintain the building in a reasonably safe condition and he could not be absolved, by reason of having leased the premises, from liability to the person thus injured. A verdict and judgment was had against both the owner and the tenant. The owner

appealed but the court sustained the judgment, not upon the theory that *res ipsa loquitur* applied but that there was evidence tending to show negligence.

We have found no case, based upon a similar factual situation—and none has been cited—wherein liability has been sustained against the lessor.

The plaintiff has simply failed to establish the essential element of his case, viz., that, at the time of the accident, the defendant had exclusive control and management of the agency causing the injury. There was no error in directing a verdict for the defendant owner.

Since no negligence has been shown against the defendant, it is unnecessary to consider whether the storm was of such intensity as to be deemed an act of God. However, see *Feeney v. New York Waist House,* 105 Conn. 647, 136 A. 554, 50 A. L. R. 1539.

The judgment is affirmed.