H. June Jackson, Appellee and Cross-Appellant, v. 919 Corporation, Thomas J. Fleming, Aldis Browne, and Howard L. Storch, Individually and as Copartners, Trading as Ross, Browne and Fleming, a Copartnership, Cross-Appellees, and Huyler's, a Corporation, Appellant.

Gen. No. 44,885.

Opinion filed October 25, 1950. New opinion filed on rehearing November 5, 1951. Released for publication November 20, 1951.

ECKERT, PETERSON & LEEMING, of Chicago, for appellant; A. R. PETERSON, HAROLD W. HUFF, and WALTER P. STEFFEN, all of Chicago, of counsel.

JOSEPH D. RYAN, LOUIS G. DAVIDSON, and ARTHUR RYAN, all of Chicago, for cross-appellant.

VOGEL & BUNGE, of Chicago, for cross-appellees; L. H. VOGEL, and GEORGE C. BUNGE, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Rehearing having been allowed, the cause was reassigned to this division of the court as now constituted. We have examined the record and briefs submitted by the several parties, heard oral argument thereon and have arrived at the same conclusions reached in the opinion filed by the Second Division on October 25, 1950.

From the facts disclosed by the record it appears that while walking on the public sidewalk in front of the Palmolive Building on North Michigan avenue in Chicago, plaintiff was struck and injured by glass from the inner sliding panel of Huyler's window when it broke as she approached. The outer window had fallen or been blown out by a strong wind an hour or more prior to the accident, leaving the inner panels exposed and unprotected. In her suit to recover damages for injuries sustained, plaintiff joined Huyler's, a corporation, a tenant of the building, the 919 Corporation, owner of the building, and Ross, Browne and Fleming, managing agents, as defendants. Trial by jury resulted in a verdict against all defendants in the sum of $12,500. Thereafter the court entered judgment upon that verdict against Huyler's only, and judgment in favor of the remaining defendants upon their motion for judgment notwithstanding the verdict. Huyler's has taken an appeal from the adverse judgment for $12,500. From the order allowing the motion of the remaining defendants, plaintiff has prosecuted a cross-appeal. The motions of all defendants for a new trial

were denied. From the order denying that motion, defendant Huyler's also appeals. No appeal has been prosecuted by the remaining defendants from the order denying their motion for a new trial. At the conclusion of the evidence offered on behalf of plaintiff, all defendants made motions for a directed verdict, which were denied. Thereafter evidence was presented on behalf of Huyler's only; the remaining defendants rested their cases at the close of plaintiff's evidence, and offered no additional evidence. Huyler's motion for a directed verdict at the close of all the evidence was likewise denied.

The Palmolive Building, located at 919 North Michigan avenue in Chicago, was owned by the 919 Corporation. At the time of the accident it was being managed by the copartnership of Ross, Browne and Fleming. The front of the building, which faces west, is adjacent to the east side of Michigan avenue. Immediately to the south of an entrance leading from the public sidewalk into the corridors of the building were the premises occupied by defendant Huyler's. Adjacent to the sidewalk there were two glass display windows with an entrance door between, separated by a portion of the stonework constituting the face of the building. The second floor along the Michigan avenue side, immediately above Huyler's premises, was occupied by Ross, Browne and Fleming. The building was constructed about 1929, and in 1940 certain windows along the Michigan avenue side of the building were reinforced by installing additional supports, thereby reducing the size of the glass panels. No change was made in the windows in the portion of the building occupied by Huyler's. Huyler's occupied the premises under the provisions of a written lease. The show windows in its stores were used for the purpose of displaying its confectionery products.

Among the tenants in the building was the Russell M. Seeds Company. Plaintiff was secretary of this

corporation, and her husband was also an employee thereof. Some time after three o'clock of the afternoon of June 10, 1947 the window to the south of the Michigan avenue entrance to Huyler's was broken and blown out onto the sidewalk by the force of a strong wind. When the outer window broke, there were left in place sliding glass panels comprising an inner window a few feet inside the outer window. At the request of Huyler's, all the patrons left the store. The doors into the establishment were closed and locked. The agents of the building being notified, several employees were dispatched to clean up the broken glass, barricade the windows, and give warning of the condition. A rope was stretched along the sidewalk opposite the broken window, closing the adjacent sidewalk to pedestrian traffic. The boarding of the window was being carried out by building employees, who had been so engaged between one and one-half to two hours. It was during this period that plaintiff was injured. She had left her office in company with her husband, and descended by elevator to the lobby, intending to go to the parking lot south of the building. After leaving the Michigan avenue entrance, they turned south toward the barricade, plaintiff's husband walking in front. Plaintiff knew that the outer glass had been broken and had talked to the elevator starter about it before leaving the building. A strong wind was blowing, and she saw the rope barricade across the sidewalk. Just before they reached the barricade, she saw and heard one of the inner glass panels break and crumble in the direction of the street. She and her husband both turned their backs at that moment to protect themselves from flying glass, but she was struck by splintered glass which cut a tendon in her left leg, and also inflicted a lesser cut on the right heel.

The amended complaint alleged that all of the defendants were jointly in possession and control of the large windows on the front or Michigan avenue side

of the store premises occupied by the defendant Huyler's, and charged that "the negligence of the defendants and each of them [specifying five separate and specific acts of negligence], acting concurrently and in combination with the negligence of each other . . . caused the accident and injuries . . . complained of." Upon trial it was stipulated that the duties and obligations of the building managers were identical with those of the defendant 919 Corporation which owned the Palmolive Building.

The store premises in question were leased by the building to Huyler's under a written lease dated June 30, 1945 which provided, among other things, that the lessee would immediately replace at its sole expense any plate glass in the demised premises which might become damaged; that the premises, fixtures and equipment were in good order and condition when Huyler's took possession under the lease; and that the lessee should keep the demised premises, fixtures and equipment in good repair, working order and condition, and if any of the fixtures and equipment should become worn out, damaged or destroyed, lessee would replace the same. There was a specific provision that "lessee will at all times during said term keep said demised premises in good repair and in tenantable condition replacing any and all broken glass in and about said premises with glass of the same size and quality." The lessor retained the right to pass upon or remove any objectionable signs or other advertising, but did not retain any right to enter into the demised premises for purposes of inspection, repair or otherwise.

Evidence was adduced upon hearing of the cause that the windows were cleaned by the tenant Huyler's, which also took care of its own janitor service. The building had a contract with an outside contractor to clean the metal work around all the windows of the building, as well as the metal strips and screws holding

them in place, but this contractor did not have anything to do with replacing missing or defective fastenings. It was further shown that the building superintendent made an almost daily inspection of the outside of the store fronts to see if there were any defects, but there is no evidence that any defects were ever discovered in the windows involved in this case. Following the accident Huyler's insurance company arranged to and did replace the glass, both on the outside windows and the inside panels. Upon this state of the record plaintiff contended that the building and its managers retained some control over the outer windows, notwithstanding that they were on premises leased to Huyler's and notwithstanding that the lease provided that Huyler's should maintain and repair them. It is conceded by plaintiff that Huyler's had exclusive possession and control of the inner window, the breaking of which injured plaintiff.

Under the general rule in this state the tenant or occupant of leased premises, and not the owner thereof, is responsible for injuries resulting from the defective condition of the demised premises. Certain exceptions to this rule are enumerated in *West Chicago Masonic Association v. Cohn*, 192 Ill. 210, as follows: "The owner of leased premises may be made liable for such injuries (a) if the covenants of the lease require that he shall keep the premises in repair; (b) if the dangerous or defective condition by which the injury was occasioned existed when the premises were leased; (c) if that which occasioned the injury was a nuisance and was upon the premises when the lease was executed." The same rule was later followed in *Marcovitz v. Hergenrether*, 302 Ill. 162, *Brazowski v. Chicago Title & Trust Co.*, 280 Ill. App. 293, and *Murphy v. Illinois State Trust Co.*, 375 Ill. 310. The inspection of the store fronts and the cleaning of the outside of the building from time to time by building employees are relied upon by plaintiff as circum-

525

stances giving rise to an inference of control over the maintenance of these windows, and it is also urged that the building retained the right to enter the premises leased to Huyler's to make such repairs as it saw fit. However, we find in the lease no covenant to repair, nor any reservation of a right to enter the premises for that purpose. Several of the decisions outside of Illinois relied on by plaintiff are distinguished in the well-reasoned case of *Nash v. Goritson,* 174 Ore. 368, 149 P. (2d) 325. In that case plaintiff, a pedestrian, was injured by the breaking of a window in a tenant's store during a severe windstorm. The written lease did not contain any covenant on the part of the lessor to repair, but did include a reservation of his right to "enter into and upon the same (premises) to examine the condition thereof." Plaintiff there sought to recover damages from the owner of the building and to invoke the doctrine of *res ipsa loquitur.* The court, in holding that plaintiff had failed to introduce evidence tending to show that defendant had control of the instrumentality alleged to have caused the injury, said that the express reservation of a right of entry for the purpose of inspection was not equivalent to a covenant to repair, such as that involved in *Appel v. Muller,* 262 N. Y. 278, 186 N. E. 785, one of the cases upon which plaintiff relies, and that the trial court correctly directed a verdict in favor of defendant. If an express reservation of the right to enter the leased premises for purposes of inspection does not constitute control on the part of the landlord, it would certainly seem to follow that an informal inspection of the outside of the premises, not involving any entry therein, does not constitute control of the premises.

 It is also argued by plaintiff that because the building employees, after the windows blew out, roped off the locality and assisted in boarding up the windows, there arises an inference of control of Huy-

ler's premises by the building or its managers, or some negligence on their part. Numerous authorities dealing with the inference of liability by a lessor for voluntarily and gratuitously making repairs on demised premises are collected in 150 A. L. R. 1373 in the annotation entitled "Landlord's liability for injury to person or damage to property as affected by his making of repairs in absence of obligation to do so." The discussion and decisions cited are generally to the effect that the making of repairs by a landlord who is under no duty or covenant to do so, neither imposes a duty upon him to make the repairs, nor indicates any control of the premises on his part. In *Hansen v. Gromoll*, 232 Ill. App. 485, the court adopted the statement in *Quinn v. Crowe*, 88 Ill. App. 191, that "it is not infrequent that a landlord's self-interest will prompt him to do many things to his property, during the term of a lease of it, to protect it from decay or injury, but his so doing does not make him a covenantor to repair." We are therefore led to the conclusion that the record affords no basis for a finding, either by the court or the jury, that the building and its managers had possession or control of the windows involved in this occurrence, either alone or jointly with Huyler's, in whose leased premises they were located. Nevertheless, by instructions 18, 19 and 20 the court submitted to the jury the question whether Huyler's and the other defendants were in possession and control of the outer large glass window, and instructed them that if they believed that the negligence of the defendants (jointly) in failing to keep and maintain the window in a safe and adequately secure condition caused plaintiff to be injured, then they should find the defendants guilty. Under the current weight of authority the question of control was governed by the provisions of the lease, and we think it was error for the court to submit the question to the jury as a matter of fact; it confused the issues. The

court should have directed a verdict in favor of the building and manager defendants at the close of plaintiff's case, and submitted to the jury only the issues pertaining to Huyler's liability.

In view of our conclusion that neither the owner nor the managers of the building exercised any such control over the outer window as would require them to meet the presumption created under the doctrine of *res ipsa loquitur,* and the admission of plaintiff that Huyler's alone had control of the inner panel, it will be unnecessary to discuss plaintiff's contention that the doctrine of *res ipsa loquitur* may be applicable where two or more persons exercise joint control. If the doctrine has any relevancy to the facts of this case, it must be confined solely to the liability of Huyler's.

██ Upon examination of the amended complaint we find no general charges of negligence. As heretofore indicated there are specific allegations of negligence dealing with properly securing, fastening and supporting the outer windows, failing to adequately guard or protect the dangerous area in the immediate vicinity of the store, and failing to warn plaintiff of the danger of coming in proximity to the store windows at a time when they were likely or liable to fall or be blown upon persons on Michigan avenue. In the course of the trial plaintiff attempted to prove these charges of specific negligence, as she had the right to do, but it was not until after she had closed her proof that she asked the court to submit the case to the jury on the theory of *res ipsa loquitur.* The courts of this state have consistently held that this doctrine may be invoked only upon general charges of negligence, and where evidence is offered tending to prove specific acts of negligence there is no room for presumption under the doctrine. *Feldman v. Chicago Rys. Co.,* 289 Ill. 25; *O'Rourke v. Marshall Field & Co.,* 307 Ill. 197; *Blade v. Site of Ft. Dearborn Bldg. Corp.,* 245 Ill. App.

484; *Crawford v. Chicago Union Traction Co.,* 137 Ill. App. 163; *Adamsen v. Magnelia,* 280 Ill. App. 418; and *O'Hara v. Central Illinois Light Co.,* 319 Ill. App. 336. If upon retrial plaintiff desires to invoke the doctrine of *res ipsa loquitur,* she may amend her complaint to include charges of general negligence; but if she wishes to stand on her allegations of specific negligence and to introduce evidence in support thereof, she cannot avail herself of the doctrine and no instructions should be given to the jury on the theory of presumptive negligence under the doctrine. *William Wrigley, Jr., Co. v. Standard Roofing Co.,* 325 Ill. App. 210, is precisely in point and enunciates the rule in this State.

Because of the manner in which the case was tried and the confusion which undoubtedly resulted from the instructions tendered by plaintiff and given by the court, we adhere to the conclusion reached in the former opinion; accordingly, judgment as to the defendant Huyler's is reversed and the cause remanded for a new trial; judgment in favor of the remaining defendants notwithstanding the verdict is affirmed.

*Judgment reversed in part and affirmed in part, and cause remanded for a new trial, as to defendant Huyler's; plaintiff's cross-appeal dismissed.*

BURKE, P. J. and NIEMEYER, J., concur.