**THE DALLES CITY, a municipal corporation, Appellant,**

v.

**RIVER TERMINALS COMPANY, Appellee.**

**No. 14287.**

United States Court of Appeals Ninth Circuit.

Sept. 21, 1955.

Healy, Circuit Judge, dissented.

Phillips, Coughlin, Buell & Phillips, James K. Buell, Portland, Or., Charles A. Phipps, Phipps & Phipps, The Dalles, Or., for appellant.

Harold E. Patterson, Hickson & Dent, Portland, Or., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

The Dalles City, although a municipal corporation of the State of Oregon, owned and operated a municipal airport across the Columbia River at Dallesport, Washington, as the Oregon law permitted it to do. The City made a lease to S & M Flying Service, a corporation, whereby it leased and let to the latter the privilege of using the airport in common with others, and also the exclusive use of the hangar and shop buildings on the airport grounds. The appellee River Terminals Company, plaintiff below, made an arrangement with S & M Flying Service, whereby the latter agreed to store an airplane belonging to plaintiff within the hangar building in the possession of the Flying Service. This airplane was in that hangar during the month of January, 1950, when a very heavy snowfall occurred piling snow to a considerable depth upon the roof of the hangar building.

The lease to the Flying Service contained the following provision: "The Lessor reserves the right, but shall not be obligated to the Lessee, to maintain and keep in repair the landing area of the airport and all publicly owned facilities of the airport, together with the right to direct and control all activities of the Lessee in this regard."

DeWald, airport manager employed by the City, and Moore, president of Flying Service, were in conference each day following the heavy snowfall with respect to the snow conditions. The president testified: "Mr. DeWald and I were inside of the building on the 19th and looked for any signs of disturbances that might indicate to us any danger and we decided that there was none and went on about our other work." He also testified: "Q. Did you ever ask him to take the matter up with the City Engineer? A. No. We didn't feel that there was any danger at that time. That was the purpose of our discussion—that was the outcome of our discussion that we didn't feel that there was any immediate danger then."

The roof of the hangar in which the airplane was stored collapsed on January 20, 1950, and damaged the plaintiff's plane. This collapse was due to the weight of the snow upon the roof. Plaintiff's expert witness, an architect, testified that in his opinion the collapse came about because the snow load upon the roof was uneven in that the weight was more heavy on some portions of the roof than upon others. This the witness called "eccentric loading", which in his opinion caused a strain for which the roof was not designed.

The plaintiff brought this action against both the S & M Flying Service and the City to recover the damages to its airplane. The cause was tried to the court sitting without a jury and judgment was granted against both defendants. The City appeals and here urges among other things the contention made by it in the court below stated in the pretrial order as follows: "Defendant The Dalles City contends that the admitted facts and the statement of factual contentions contained in the foregoing pre-trial order are not sufficient to constitute a cause of action against this defendant for the reason that plaintiff has not shown any duty on the part of this defendant toward plaintiff or its property and for the further reason that the admitted facts affirmatively disclose that this defendant owed no affirmative duty toward plaintiff or its property."

■ The point so made and again urged upon this appeal is well taken. The ordinary rule is that where premises are let to a tenant the landlord owes no general duty of repair. Clarke v. Yukon Inv. Co., 83 Wash. 485, 487, 145 P. 624, 625; Miles v. Spokane P. & S. Railway Co., 176 Or. 118, 126, 155 P.2d 938, 941. Here in the paragraph of the lease quoted above, the City reserves the *right* to intervene and repair, but it assumed no *duty* to do so, and hence, the day before the accident, it was in the position of the ordinary landlord. All that the City did thereafter was through the action of its airport manager as above noted in going inside the building and looking for signs of disturbances indicating danger. The only testimony upon this matter was as shown in the portions quoted above.

■ The grounds on which the trial court held the City liable are set forth in the court's opinion, as follows: "I find the defendant, The Dalles City, liable because, shortly before the roof collapsed, one of its employees made an examination of the hangar and particularly the roof. Therefore, even though The City was not required, under its lease, to exercise control over the facilities on the airfield, it in fact did so. Having done so, its conduct in failing to order the snow removed or take other precautions constituted negligence." It is plain that the district court thought that this was a case for the application of the general rule that one who although not under legal obligation to repair, nevertheless undertakes to make repairs and then fails to exercise ordinary care in that undertaking, becomes responsible for the results of his negligence. Generally the law distinguishes between the failure or refusal of the landlord to do what he has not promised to do or is not legally bound to do and his doing it in a negligent manner.[1] While the rule which the trial court undertook to apply has wide and general application,[2] we think that it would not extend so far as to attach liability to a landlord who did no

1. This distinction has sometimes been referred to as a distinction between "nonfeasance" and "misfeasance". See also Prosser on Torts, p. 195.

2. "Notwithstanding that plaintiff was not legally bound to repair the roof, yet, having undertaken so to do, he is liable for the damage sustained on account of a failure to make said repairs in a proper and skillful manner. The principle that governs in such cases being that, although the landlord is not bound to repair in the absence of an express covenant to repair, where no controlling statute interferes, and though his promise to repair, made subsequent to the execution of the lease, is without consideration, and hence is unenforceable, yet if he shall voluntarily and gratuitously undertake, during the term, to repair the demised premises, he is bound in so doing to use ordinary care and diligence. He may be held responsible for his negligence or lack of care and skill, or the negligence of his servants, or those employed by him in doing what, in the first instance, he was not bound to do. The distinction is made by the authorities between nonfeasance and misfeasance of the landlord. In other words, the law distinguishes between the failure or refusal of the landlord to do what he has not promised to do, or is not legally bound to do, and his doing it in a negligent manner. But if the landlord voluntarily repairs and actually enters upon the carrying out of his scheme

more than inspect a building. Here, where the lessor reserved the right to make repairs, while expressly negativing any obligation to do so, it must be conceded that the landlord had the right merely to look at the premises for the purpose of seeing whether it would or would not choose to make repairs. Cf. Nash v. Goritson, 174 Or. 368, 372, 149 P.2d 325, 326. The City had the absolute right to "have a look" without thereupon assuming a larger duty.

For that reason the judgment made and entered against The Dalles City must be reversed, and it is so ordered.

HEALY, Circuit Judge (dissenting).

In my opinion the evidence supports the trial court's finding relative to the City's exercise of its reserved right of control over the airfield facilities. Accordingly, I would affirm the judgment.

of repair, he will be responsible for the want of due care in the execution of the work, upon the principle of liability for negligence, without reference to any question of implied contract to repair, or implied consideration." Horton v. Early, 39 Okl. 99, 134 P. 436, 438, 47 L.R.A., N.S., 314.